728 So.2d 533 (1999)
BANQUE DE DEPOTS
v.
BOZEL MINERACAO E FERROLIGAS.
No. 98-CA-0742.
Court of Appeal of Louisiana, Fourth Circuit.
January 27, 1999.
*534 Aubrey B. Hirsch Jr., Locke Purnell Rain Harrell, New Orleans, Louisiana, and Scott A. Roberts, Sullivan, Weinstein & McQuay, Boston, Massachusetts, For Plaintiff/Appellant Banque De Depots.
C. Gordon Starling, Jr., Stephanie D. Skinner, Gelpi, Sullivan, Carroll & Gibbens, New Orleans, Louisiana, Counsel for Defendant/Appellee Companhia Paulista De Ferroligas.
Eric A. Bopp, Edward S. Boppa, Law Corporation, Arabi, Louisiana, for Defendant/Appellee Peixoto and Cury Advogados S.C.
Court composed of Judge JOAN BERNARD ARMSTRONG, Judge CHARLES R. JONES and Judge MIRIAM G. WALTZER.
ARMSTRONG, Judge.
This is an appeal from a judgment entered upon a motion to enforce a settlement. The litigation settled was quite complex and involved lawsuits in two other countries as well as two actions in Louisiana. The Settlement Agreement, while entered into in connection with the actions in Louisiana, also extended to the lawsuits in other countries. One of the provisions of the Settlement Agreement was a defense and indemnity provision requiring each party to provide defense and indemnity to the other party if certain types of claims should occur. Aside from some procedural exceptions made by one of the appellees with respect to the manner in which the issue of enforcement of the settlement was raised, the only issue is whether certain claims for attorney's fees, made by attorneys for one of the settling parties against the other settling party, are within the scope of the defense and indemnity provision of the Settlement Agreement. The trial court held that, to some extent, the attorney's fees claims are within the scope of the defense and indemnity provision. All parties appeal. We believe that the defense and indemnity provision is clear and unambiguous and that it applies to all of the attorney's fees claims at issue. Thus, we will amend the judgment of the trial court, to broaden it, and affirm as so amended.[1]
This litigation has its origins in an international commercial financing transaction. The Banque De Depots ("BDD"), a Swiss bank, advanced funds equal in amount to millions of U.S. dollars. The funds were, according to BDD's allegations, advanced to a Brazilian company named Bozel Mineracao E Ferroligas ("Bozel"). Another Brazilian company, Companhia Paulista De Ferroligas, S.A. ("CPDF"), eventually became the successor to Bozel. Bozel, and then CPDF, alleged that BDD had actually advanced the funds, not to Bozel, but to Hofflinghouse Finance Ltd. ("Hofflinghouse"). Apparently because Hofflinghouse became insolvent, BDD sought to recover from Bozel, and then CPDF, the funds BDD had advanced. This resulted in the initiation of five lawsuits as follows.
BDD brought an action against Bozel in Brazil for verification of accounts which sought to establish that Bozel was indebted to BDD ("the Brazilian Verification Action"); BDD filed against Bozel in St. Bernard Parish, Louisiana, two actions urging various legal theories for recovery of money damages and Bozel filed reconventional demands against BDD seeking money damages ("the Louisiana actions");[2] Bozel filed against *535 BDD in Brazil a declaratory action which sought a declaratory judgment to the effect that Bozel was not indebted to BDD ("the Brazilian Declaratory Action"); Bozel filed against BDD in Geneva, Switzerland a "summons of payment" ("the Geneva Action").
After Bozel was succeeded by CPDF, there were settlement negotiations between BDD's United States counsel and an attorney in the United States who represented CPDF. The result of these negotiations was a "walk away" settlement in which each side agreed to dismiss, with prejudice, all of its claims against the other in the five lawsuits and to give a full and final release to the other party. Each party was to bear all of its own court costs, attorney's fees and other expenses of the litigation. The settlement also included the reciprocal defense and indemnity arrangement at issue in this appeal. In May, 1996, counsel informed the trial court that the matter was settled. Also, BDD and CPDF reduced their settlement agreement to a formal writing in a six-page Settlement Agreement to which were attached as exhibits forms of stipulations of dismissal and forms of releases for each party's execution. The Settlement Agreement includes a choice of law clause, specifying Louisiana law and a choice of forum clause specifying Louisiana courts as the exclusive forum for any actions related to the Settlement Agreement.
Despite the Settlement Agreement, it appears that the Brazilian Declaratory Action was not dismissed. More specifically, and more importantly, the court in which the Brazilian Declaratory Action was pending rendered a judgment, in favor of CPDF's Brazilian attorneys, Peixoto & Cury Advogages S.C. ("Peixoto") and against BDD, for attorney's fees in an amount equivalent to more than one million U.S. dollars. Apparently, under Brazilian law, this attorney's fee claim belongs to Peixoto rather than CPDF. However, whether that attorney's fee claim belongs to Peixoto or to CPDF does not affect our analysis because this appeal does not address Peixoto's right to collect attorney's fees but, instead, addresses only CPDF's obligation to defend and indemnify BDD against Peixoto's claim.
Peixoto began attempts to collect from BDD its attorney's fee judgment against BDD. In addition to collection proceedings in Brazil, Peixoto engaged a Swiss attorney to make demand upon BDD in Switzerland, filed a Petition For Intervention in one of the Louisiana Actions and filed a Petition For Declaratory Judgment against BDD in the St. Bernard Parish court. BDD demanded of CPDF that, pursuant to a defense and indemnity provision of the Settlement Agreement, CPDF defend and indemnify BDD against these various collection actions by Peixoto. CPDF refused to so defend or indemnify BDD and, as a result, BDD filed against CPDF in the Louisiana Actions a motion to enforce settlement.
The terms of the Settlement Agreement determine whether CPDF is obligated to defend and indemnify BDD. The Settlement Agreement initially was drafted by BDD's counsel, based upon an agreement in principle with CPDF's counsel, and was reviewed, revised and approved by CPDF's counsel. The Settlement Agreement is a "global settlement" by which the parties settled, not only the Louisiana Actions, but also their other three lawsuits as well, and by which they released all of the various claims between them. The recitals of the Settlement Agreement identify specifically the two Louisiana Actions, the Brazilian Verification Action, the Brazilian Declaratory Action and the Geneva Action. The recitals also reflect the desire of the parties to settle all of the disputes between them including all five of the identified lawsuits. The Settlement Agreement then provides that the parties will dismiss with prejudice all five of the lawsuits including all reconventional demands, etc. and with neither party receiving from the other costs or attorney's fees.
*536 For purposes of the present appeal, the key provision of the Settlement Agreement is paragraph 6, which states:
6. Each party agrees that it will defend and indemnify any other party against any loss, damages, costs, and expenses incurred by that party as a result of any claim, suit, or other legal action arising out of the transactions at issue in the Louisiana Actions brought against it by any current officer, director, agent, employee, servant, or attorney of any other party or of any other party's corporate predecessors or successors.
(emphasis added).[3] The scope of this defense and indemnity provision manifestly is not limited to claims arising out of the Louisiana Actions. Instead, it applies to claims arising out of "the transactions which are at issue" in the Louisiana Actions. Those transactions are, of course, the advances of funds by BDD and the pre-litigation dealings among BDD, Hofflinghouse and Bozel related to those advances (and, when the Settlement Agreement was to have included Victoria Alloys, the dealings between Victoria Alloys and Bozel). Those transactions are described in pleadings filed by the parties in the Louisiana Actions. Because of the complexity of those transactions, and their limited relevance to the present appeal, we will not describe them in detail. Suffice it to say that the loan documentation reflects loans by BDD to Hofflinghouse rather than Bozel and that advances of funds were made by BDD to Hofflinghouse rather than Bozel and that there was the possibility that Hofflinghouse and Bozel had worked in concert to deceive BDD. See Banque de Depots v. Bozel Minercao E. Ferroligas, 93-CA-0650 (La.App. 4th Cir. 12/20/93), 628 So.2d 280 (unpublished opinion reversing summary judgment and remanding) (attached hereto as Appendix A).
It is undisputed that the Brazilian Declaratory Action (in which the judgment was rendered against BDD on Peixoto's attorney's fees claim) involved the same above-described transactions as were involved in the Louisiana Actionsi.e. the advances of funds by BDD and the dealings among BDD, Hofflinghouse and Bozel. Whereas BDD filed the Louisiana Actions to establish that Bozel owed to BDD repayment of the fund advances, Bozel filed the Brazilian Declaratory Action to establish that Bozel did not owe to BDD repayment of the fund advances. This identity of the transactions at issue in the Brazilian Declaratory Action to those at issue in the Louisiana Actions, and the "mirror image" relation of the Brazilian Declaratory Action to the Louisiana Actions, is shown by (1) the consistent descriptions of the Brazilian Declaratory Action appearing in the briefs filed in this appeal by BDD, CPFD and Peixoto; (2) pleadings and a court decision filed in the Brazilian Declaratory Action (a certified translation of which is attached to CPDF's brief in this appeal); and (3) the unrebutted affidavit of Thomas N. O'Connor introduced into evidence by BDD at the hearing below on BDD's motion to enforce settlement.[4]
*537 Because the same transactions were the subject of both the Louisiana Actions and the Brazilian Declaratory Action, and Peixoto's attorney's fee claim and the judgment on it were a part of the Brazilian Declaratory Action, Peixoto's attorney's fee claim arises from the same transactions as were at issue in the Louisiana Actions. Put another way, but for the very same transactions as were at issue in the Louisiana Actions, there would have been no Brazilian Declaratory Action and no attorney's fee claim of Peixoto. Peixoto's attorney's fees claim arose from the BDD fund advances and the dealings among BDD, Bozel and Hofflinghouse, because the Brazilian Declaratory Action, in which Peixoto's attorney's fees claim was generated, arose from those transactions. Not only is this meaning dictated by the express language of the Settlement Agreement, it is in keeping with the overall tenor of the Settlement Agreement which reflects a "walk away" status quo settlement with, among other things, each party bearing its own costs and attorney's fees. It would be an extraordinary anomaly, relative to the other provisions of the Settlement Agreement, for BDD to be left responsible for a million dollar fee to Bozel/CPDF's lawyers.
CPDF argues that, if an attorney's fee claim generated by the Brazilian Declaratory Action were to be within the scope of the defense and indemnity provision, then the defense and indemnity provision would have mentioned, not only "the transactions at issue in the Louisiana Actions," but also the transactions at issue in the Brazilian Declaratory Action (and, for that matter, the transactions at issue in the Brazilian Verification Action and the Geneva Action). BDD responds to CPDF's argument by explaining that the Louisiana Actions were the broadest in scope of the five lawsuits so that, by referencing the transactions at issue in the Louisiana Actions, the defense and indemnity provision necessarily covered all transactions at issue in the other three lawsuits plus matters raised only in the Louisiana Actions. It appears that BDD is correct in this regard. It should be recalled, see footnote 3 supra, that the Settlement Agreement originally was drafted as a three-party agreement among BDD, CPDF and Victoria Alloys. When Victoria Alloys refused to join in the settlement, the Settlement Agreement was revised to delete Victoria Alloys as a party to it but it was not revised substantively. Thus, paragraph 6, the defense and indemnity provision, was not revised when Victoria Alloys was deleted from the Settlement Agreement. Victoria Alloys had intervened in the Louisiana Actions but it was not a party to the other three lawsuits. When the defense and indemnity action is read with the understanding that it was drafted in contemplation of a three party settlement, including Victoria Alloys, and that Victoria Alloys was a party only to the Louisiana Actions, the choice of referencing "the transactions at issue in the Louisiana Actions," as a means of encompassing all matters at issue among any of the parties, is logical or, at least, explicable. Put in the terms used by BDD, the Louisiana Actions were "broader" than the other three lawsuits because only the Louisiana Actions had as parties in litigation all three of the parties expected to participate in the settlement at the time the defense and indemnity provision of the Settlement Agreement was drafted.
The trial court's judgment requires CPDF to defend BDD from claims made in Louisiana courts against BDD by Peixoto. We will, in accordance with our above analysis of the defense and indemnity provision, modify the judgment of the trial court to make it broader. CPDF must defend BDD from the attorney's fee claim brought in Louisiana courts, but also as to Peixoto's attorney's fee claim brought against BDD in Brazilian, Swiss or other courts. If Peixoto should succeed in collecting from BDD some or all of the attorney's fees, then CPDF must reimburse BDD for the amount so collected regardless of whether the collection was pursuant to claims made in Louisiana courts, Brazilian courts, Swiss courts or other courts. We also will remand this case to the trial court so that it might resolve any disputes over the specifics and means of whatever defense is necessary and so that the trial court can determine if, when and how much Peixoto has collected from BDD and oversee CPDF's reimbursement of BDD for *538 any amounts so collected from BDD by Peixoto.
CPDF also raises a procedural issue. CPDF filed several exceptions in the trial court. Those exceptions were overruled by the trial court and this court denied CPDF's writ application as to those exceptions. CPDF re-urges those exceptions in the present appeal.
CPDF's exceptions are based upon the contention that BDD should not have raised the settlement indemnity issue by a motion to enforce settlement but, instead, should have commenced a completely new civil action by filing a new petition, having a new citation issued, and serving the new citation and petition upon CPDF. We disagree for several reasons.
First, a review of published appellate caselaw as to the enforcement of settlement agreements shows that the most common means of enforcing a settlement of litigation is by a motion to enforce settlement agreement rather than a completely new civil action. See, e.g., Dammann v. Molero, 97-1944 (La.App. 4 Cir. 3/18/98), 709 So.2d 344; Addison v. RTA, 97-2289 (La.App. 4 Cir. 12/3/97), 703 So.2d 810; Mayeaux v. Denny's, Inc., 95-453 (La.App. 5 Cir. 10/18/95), 663 So.2d 822; Hendrix v. City of New Orleans, 562 So.2d 1164 (La.App. 4th Cir.1990); D'Arbonne Bank & Trust Co. v. James, 597 So.2d 165 (La.App. 2nd Cir.1992) writ denied, 604 So.2d 1000. Second, when a settlement of litigation is sought to be enforced, a motion to enforce that settlement is properly characterized as "an incidental question arising in the course of [that] litigation" which may properly be addressed by a summary proceeding (i.e. a motion) rather than by a completely new civil action. La.Code Civ. Proc. art. 2592(1). "Generally, summary proceedings are allowed in instances where the issue to be resolved is narrow and/or the need for rapid adjudication is great." Clay v. Clay, 389 So.2d 31, 35 (La.1979). Motions for enforcement of litigation settlements, which settlements must be either in writing or recited on the record in open court, La. Civ.Code art. 3071, are apt to present narrow issues. As to the need for rapidity, settlements of litigation, which are to be encouraged, are made more likely when parties have confidence that they can be enforced, if necessary, by the most expeditious procedure the law allows. Third, use of a motion to enforce settlement, rather than a new civil action, brings the issue directly to the court and judge before whom the settled litigation was pending and who would most likely be in the best position to decide the issue.
CPDF asserts that BDD's motion was "in essence" a motion for summary judgment which was denied in part and that, to the extent it was denied, the trial court's judgment is not appealable. Even a cursory examination of BDD's motion shows that it was not, "in essence" or otherwise, a motion for for summary judgment. Also, the transcript of the hearing on BDD's motion shows that the trial court did not treat BDD's motion as a summary judgment motion. Instead, the trial court conducted an evidentiary hearing (i.e. a trial with live testimony) on a motion to enforce settlement.
CPDF asserts that BDD breached the Settlement Agreement, by appealing the judgment entered against BDD in the Brazilian Declaratory Action, in an unsuccessful attempt to avoid Peixoto's attorney's fee claim. CPDF then goes on to argue that, if BDD itself breached the Settlement Agreement, then BDD should not be allowed to enforce the Settlement Agreement. However, the only reason that BDD appealed the judgment in the Brazilian Declaratory Action was because that action was not dismissed as was expressly required by the Settlement Agreement. Under that circumstance, there certainly is no ground to deny BDD the right to enforce the Settlement Agreement.
CPDF also asserts, for reasons that are not at all clear, that BDD's motion to enforce settlement is premature. BDD's representative testified at the evidentiary hearing on the motion to enforce settlement that Peixoto, in its attempts to collect attorney's fees from BDD, had brought actions against BDD in both Brazil and Louisiana and that Swiss counsel for Peixoto had made demand on BDD in Switzerland and that BDD was incurring legal expenses to respond to all these collection efforts by Peixoto. *539 Thus, BDD is already suffering some actual damages because of CPDF's failure to defend BDD and, undoubtedly, unless Peixoto's attorney's fees claim is either defeated, compromised or satisfied by CPDF, then BDD will continue to be damaged. BDD certainly did not act prematurely in bringing its motion to enforce judgment.
For the foregoing reasons, we affirm the judgment of the trial court that CPDF must defend BDD against attorney's fee claims of Peixoto brought in Louisiana courts, amend the judgment of the trial court to require CPDF to defend BDD from attorney's fee claims brought by Peixoto in Brazilian courts, Swiss courts or other courts and to require CPDF to indemnify (reimburse) BDD for any amounts Peixoto collects from BDD in court proceedings in Louisiana, Brazil, Switzerland or elsewhere, and we remand to the trial court to conduct any proceedings or enter any orders necessary or convenient and not inconsistent with this opinion in order to enforce the defense and indemnity provision of the Settlement Agreement.
AMENDED; AFFIRMED AS AMENDED.

APPENDIX A

NOT DESIGNATED FOR PUBLICATION

BANQUE DE DEPOTS

VERSUS

BOZEL MINERACAO E. FERROLIGAS

NO. 93-CA-0650

COURT OF APPEAL

FOURTH CIRCUIT

STATE OF LOUISIANA
APPEAL FROM THE 34th JUDICIAL DISTRICT COURT, ST. BERNARD PARISH, NO. 63-589, DIVISION "D", HONORABLE KIRK A. VAUGHN, JUDGE.
WILLIAM H. BYRNES, III, JUDGE.
(Court composed of Judge William H. Byrnes, III, Judge Charles R. Ward and Judge Steven R. Plotkin)
PETER J. BUTLER AUBREY B. HIRSCH, JR. LOCKE PURNELL RAIN HARRELL New Orleans, Louisiana
and
THOMAS N. O'CONNOR SCOTT A. ROBERTS GABRIELLER, WOLOHOJIAN HALE and DORR Boston, Massachusetts
Attorneys for Appellant.
RICHMOND M. EUSTIS CHARLES A. NUNMAKER KEVIN M. WHEELER MONROE & LEMANN New Orleans, Louisiana
and
RICHARD DILLENBECK STAIRS, DILLENBECK, KELLY & MERLE New York, New York
and
WALKER H. DRAKE, JR. WALKER DRAKE & ASSOCIATES Chalmette, Louisiana
Attorneys for Appellee.

REVERSED
Banque De Depots brought this claim against Bozel Mineracao E. Ferroligas ("Bozel") to recover over $4,500,000 loaned to Hofflinghouse Finance Limited. The trial court granted Bozel's motion for summary judgment and dismissed Banque De Depots' claim. We reverse.
The Banque De Depots claims that a material issue of fact exists as to whether Hofflinghouse was borrowing only in a representative capacity on behalf of Bozel as principal and/or whether Bozel induced Banque De Depots to advance the funds on the basis of fraudulent misrepresentations contained in export confirmations sent by Bozel to Banque De Depots.
Hofflinghouse was the exclusive export agent for Bozel, one of the world's largest producers of calcium silicon. The volume of business handled by Hofflinghouse for Bozel was, therefore, considerable.
The crux of this case is an agreement dated June 29, 1989 in the form of a letter from Banque De Depots on its letterhead to Hofflinghouse Finance Limited which is *540 countersigned by Hofflinghouse. In that letter agreement Banque De Depots stated in pertinent part that:
"... we have the pleasure to confirm that, in replacement of the credit line confirmed on June 26th, 1989, the following facility is made available:

DEBTOR: Any Hofflinghouse subsidiary acceptable by the Bank, with the irrevocable and unconditional guarantee of Hofflinghouse Finance LTD as per model already in your hand.

LENDER: Banque De Depots, Geneva, hereby "the Bank".
It is not contested that it is through this agreement that Banque de Depots advanced the funds it now seeks to recover from Bozel. But those funds were advanced by Banque De Depots to Hofflinghouse, not to Bozel. The funds that were wired by Banque De Depots to banks in Brazil for the credit of Bozel were debited from the Hofflinghouse account. Apparently Hofflinghouse is insolvent so Banque De Depots now seeks to recover what it advanced to Hofflinghouse from Bozel.
Bozel is not a party to the loan agreement. Banque De Depots has produced no documents of guaranty or endorsement from Bozel. After two years of discovery Banque De Depots has failed to produce a power of attorney, or corporate resolution or any other authorization from Bozel authorizing Hofflinghouse to contract loans on its behalf; nor does Banque De Depots contend that such ever existed.
However, the criteria for granting summary judgments have been clearly set forth by this Court in several recent cases such as Carr v. City of New Orleans, 622 So.2d 819, 822 (La.App. 4 Cir.1993):
Appellate courts review summary judgments de novo, using the same criteria applied by trial courts to determine whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991). A summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law. La. C. Civ. P. art. 966.B. All evidence and inferences drawn from the evidence must be construed in the light most favorable to the party opposing the motion. Schroeder, 591 So.2d at 345....
And Dibos v. Bill Watson Ford, Inc., 622 So.2d 677, 680 (La.App. 4 Cir. 1993) where this Court explained that:
... To satisfy his burden, the party moving for the summary judgment must meet a strict standard by showing that it is quite clear as to what the truth is, and that excludes any real doubt as to the existence of material fact. Vermilion Corp. v. Vaughn, 397 So.2d 490 (La.1981). The papers supporting the position of the party moving for the summary judgment are to be closely scrutinized while the opposing papers are to be indulgently treated, in determining whether mover has satisfied his burden. Vermilion Corp. v. Vaughn, supra. Where the trial court is presented with a choice of reasonable inferences to be drawn from subsidiary facts contained in affidavits and attached exhibits, reasonable inferences must be viewed in light most favorable to the party opposing the motion. Duvalle v. Lake Kenilworth, Inc., 396 So.2d 1268 (La.1981). No summary judgment will be granted even if the trial court has grave doubts regarding a party's ability to establish disputed facts. Aydell v. Charles Carter & Co., Inc., 388 So.2d 404 (La.App. 1st Cir.1980). It is not the function of the trial court on a motion for summary judgment to determine or even inquire into the merits of the issues raised. Morris v. Louisiana Coca[-]Cola Bottling Co., Ltd., 354 So.2d 659 (La.App. 1st Cir. 1977). The weighing of conflicting evidence on a material fact has no place in summary judgment procedure. Mecom v. Mobil Oil Corp., 299 So.2d 380 (La.App. 3d Cir.1974). A motion for summary judgment is not appropriate for disposition of cases requiring a judicial determination of subjective facts, e.g., motive, intent, good faith, knowledge. See Jefferson Parish School Bd. v. Rowley Company, Inc., 305 *541 So.2d 658 (La.App. 4th Cir.1974); Butler v. Travelers Ins. Co., 233 So.2d 271 (La.App. 1st Cir.1970). Testimony should neither be received nor considered, even with the consent of counsel, to decide a motion for summary judgment. Urban Management Corp. v. Ellis L. Burns, Jr., et at, supra[, 427 So.2d 1310 (La.App. 2 Cir. 1983)]; Hemphill v. Strain, 341 So.2d 1186 (La. App. 1st. Cir.1976). Making evaluations of credibility has no place in determining a summary judgment. Dixie Buick, Inc. v. Lockett, 263 So.2d 56 (La.App. 4 Cir.1972); Hemphill v. Strain, supra.

In Prado v. Sloman Neptun Schiffahrts, A.G., 611 So.2d 691, 699 (La.App. 4 Cir.1992), writ not considered, 613 So.2d 986 (La.1993), this Court noted:
A fact is material if it is essential to a plaintiffs cause of action under the applicable theory of recovery and without which plaintiff could not prevail. Generally, material facts are those that potentially insure or preclude recovery, affect the litigant's ultimate success, or determine the outcome of a legal dispute.
A motion for summary judgment is not to be used as substitute for a trial on the merits. Oiler v. Sharp Elec., Inc., 451 So.2d 1235 (La.App. 4 Cir.), writ denied 457 So.2d 1194 (La.1984), appeal after remand 514 So.2d 176 (La.App. 4 Cir.1987), writ denied 519 So.2d 117 (La.1988). The fact that a party is unlikely to prevail at a trial on the merits is an insufficient basis for rendering a summary judgment against that party. Chapeuis v. Cassimano, 568 So.2d 606 (La.App. 4 Cir.), writ denied 571 So.2d 629 (La.1990). This is true no matter how small the chances of the party opposing the motion to ultimately prevail appear to be. Dearie v. Ford Motor Co., 583 So.2d 28 (La.App. 5 Cir.), writ denied 588 So.2d 1117 (La.1991).
Therefore even though we find that Banque De Depots failed to produce any specific loan guarantees or authorizations from Bozel in view of the standards of review for summary judgment expressed above, we are compelled to conclude that Banque De Depots has succeeded in at least raising a genuine issue concerning whether Bozel may have improperly worked in concert with Hofflinghouse with the intent to deceive and damage Banque De Depots. The attorneys for Bozel acknowledged that there was substantial joint ownership of Bozel and Hofflinghouse sufficient to create the possibility that they may have been working together to deceive and harm the Banque De Depots and that their relationship might turn out to be one that could not be described as "at arm's length." Although the funds were advanced to Hofflinghouse, not Bozel, they were advanced pursuant to export confirmations from Bozel that could conceivably have been issued in concert with Hofflinghouse with the intention of deceiving and damaging Banque De Depots. Without a trial on the merits we cannot say that it is impossible for Banque De Depots to prove this. This issue is both genuine and material. How the trial court or this Court might feel about the probability of Banque De Depots' ultimate success is not the question. The question is whether the Banque De Depots has succeeded in raising a genuine issue of material fact. We find that it has.
For the foregoing reasons the judgment of the trial court is reversed.
REVERSED.
NOTES
[1] The issue of whether a provision of a written contract is clear and unambiguous is an issue of law and is reviewed de novo on appeal. Terrebonne Fuel & Lube, Inc. v. Placid Refining Co., 93-2364 (La.App. 4 Cir. 10/2/96), 681 So.2d 1292, writ denied, 96-2625 (La.12/13/96), 692 So.2d 1066. If the contract provision is found to be clear and unambiguous, then its interpretation and meaning also is an issue of law and is reviewed de novo on appeal. Id.
[2] The commercial transactions to which the advances of funds and the resulting lawsuits related involved shipment of calcium silicate. A ship's cargo of calcium silicate, which was part of the transactions, was seized in St. Bernard Parish and this resulted in the two actions filed by BDD (and the two reconventional demands filed by Bozel) in St. Bernard Parish. The cargo was sold, the funds from that sale were deposited into the registry of court in St. Bernard Parish, and the funds were split 50% to BDD and 50% to CPDF under the terms of the settlement agreement.
[3] As originally drafted, there was to have been a third party, Victoria Alloys, to the Settlement Agreement. Victoria Alloys had intervened in the Louisiana Actions because it was a customer of Bozel. However, Victoria Alloys elected not to participate in the settlement, and the Settlement Agreement was revised to delete references to Victoria Alloys. This undoubtedly explains why paragraph 6 of the Settlement Agreement refers to "any other party" rather than "the other party" which is the language that more naturally fits a two-party settlement. The affidavit of Thomas N. O'Connor, introduced into evidence at the hearing on the motion to enforce settlement, at its paragraph 21, states that, after Victoria Alloys refused to join in the settlement, the Settlement Agreement was revised to delete Victoria Alloys as a party to it but that "no substantive revisions" were made to the Settlement Agreement. Thus, it appears that paragraph 6 of the Settlement Agreement was not revised when Victoria Alloys was deleted as a party to the Settlement Agreement.
[4] The introduction into evidence of Mr. O'Connor's affidavit might have been objected to upon the ground that it was hearsay but no hearsay objection was made below nor has any objection to it been raised in the briefs on appeal. Mr. O'Connor was present in the courtroom during the hearings and BDD offered to have him take the stand and testify if the trial court or the other parties so desired. Neither the trial court nor the other parties took up that offer. Presumably, this was because it was understood by all that Mr. O'Connor would testify in accord with his affidavit and/or because the evidentiary facts recited in his affidavit were uncontested.