871 So.2d 1215 (2004)
Newton R. REYNOLDS, Newtann Limited Partnership, Edwin T. Colton, III, as Trustee for the Steven Brett Reynolds Trust, and as Trustee for the Lauren Reynolds Trust
v.
Robert D. PAULSON and XYZ Insurance Company.
No. 2003-CA-1884.
Court of Appeal of Louisiana, Fourth Circuit.
March 31, 2004.
*1217 Patricia A. Krebs, Robert J. Stefani, Jr., Bryan J. De Tray, King, Leblanc and Bland, L.L.P., New Orleans, LA, for Plaintiff/Appellant.
Howard Shapiro, Charles F. Seemann, III, Shook, Hardy & Bacon, L.L.P., New Orleans, LA, for Defendant/Appellee.
(Court composed of Judge CHARLES R. JONES, Judge MAX N. TOBIAS, JR., and Judge Pro Tempore MOON LANDRIEU).
MOON LANDRIEU, Judge Pro Tempore.
Plaintiffs, shareholders of Production Supply Company, Inc. ("PSC"), appeal the civil district court's order that sustained the defendants' exceptions of improper venue and lack of subject matter jurisdiction. Finding that proper jurisdiction and venue are in New York pursuant to the terms of the parties' agreements, we affirm.
The plaintiffs sold their interests in PSC as part of a merger that resulted in the creation of a new company, Transtar Metals, Inc. ("Transtar Metals"). In exchange, the plaintiffs received stock and promissory notes. One of the PSC shareholders, Newton Reynolds, entered into a Consulting Agreement to provide services to Transtar Marine, which was a division of Transtar Metals. Eventually Transtar Marine was spun off as a separate Louisiana corporation. In late 1999, Robert Paulson ("Paulson"), the CEO of Transtar Metals, planned to acquire another company, and to make an initial public offering of stock. Paulson advised the plaintiff, Mr. Reynolds, that the initial public offering of stock would dilute the shares held by the plaintiffs/shareholders unless they invested an additional $1.3 million in Transtar Metals. After the plaintiffs/shareholders invested an additional $1.3 million, Transtar Metals acquired Tiernay Metals Ltd. for approximately $123 million.
In March 2000, Mr. Reynolds entered into a Consulting Agreement with Transtar Metals under which Mr. Reynolds was to act as a sales representative for Transtar Metals' marine division in New Orleans. In March 2001, the marine division became a Louisiana corporation, Transtar Marine, Inc. The plaintiffs claim that Transtar Metals failed to pay commissions due to Mr. Reynolds and he resigned in October 2003.
The plaintiffs state that the public offering of stock never took place. The plaintiffs note that in December 2002, after the value of Transtar Metals declined, it was sold for $27 million, far below the offers made a few months earlier by Mr. Reynolds and another investor. The plaintiffs brought suit against Paulson, as well as Transtar Marine, and Daniel Heindel ("Heindel"), an officer of Transtar Metals and Transtar Marine, as well as Transtar Marine's, Paulson's, and Heindel's insurer, alleging breaches of fiduciary duty, detrimental reliance, and breach of contract.
Thereafter, the trial court sustained the defendants' exceptions of improper venue as well as lack of subject matter jurisdiction and denied the defendants' motion of nonjoinder of parties as moot. The trial court also denied the plaintiffs' motion to compel and motion to continue as moot. The plaintiffs' appeal followed.
On appeal, the plaintiffs argue that the Orleans civil district court had subject *1218 matter jurisdiction and venue was proper because the forum selection clauses set forth in the Merger Agreement and the Consulting Agreement were not binding on the plaintiffs. The agreements contained choice of law provisions and forum-selection clauses providing that exclusive jurisdiction is in New York State.

Consulting Agreement
The plaintiffs argue that the Consulting Agreement is in fact a contract of employment. The plaintiffs maintain that Louisiana law provides that any choice of law or choice of forum provision in an employment contract that is the subject of any civil action involving an employee shall be null and void unless the choice of forum or choice of law provision was expressly, knowingly, and voluntarily agreed to and ratified by the employee after the occurrence of the incident which is the subject of the action under La. R.S. 23:921(A)(2).[1]
Whether an individual is an employee or an independent contractor is a fact-intensive inquiry, and depends primarily on the degree of control that the principal retains in the contract over the employee's work. Powell v. Fuentes, 34,666, p. 6 (La.App. 2 Cir. 5/9/01), 786 So.2d 277, 281-82. The mere existence of an independent contractor provision is not dispositive. Id., p. 6, 786 So.2d at 282. The plaintiffs contend that the Consulting Agreement clearly contemplated that Mr. Reynolds is an employee, subject to the control of Transtar Metals. The plaintiffs submit that Transtar Metals dictated how much time Mr. Reynolds would devote to the work, the extension of the employment relationship, the employment of assistants, and the termination of the relationship.
Also, the plaintiffs assert that Mr. Reynolds did not ratify the forum selection clause after this dispute arose. Therefore, the plaintiffs contend that the forum selection clause contained in the Consulting Agreement is invalid under La. R.S. 23:921(A)(2).

Merger Agreement
The plaintiffs also argue that the plaintiffs' claims do not arise out of the Merger Agreement, but are based on actions taken outside the scope of the Merger Agreement. The plaintiffs assert that the claims against Paulson are based on Paulson's actions as an officer, and not on any duties or obligations under the Merger Agreement. The claims do not arise out of contract but out of Paulson's statutory fiduciary duty as an officer of Transtar Metals under La. R.S. 12:91. The plaintiffs complain that the Merger Agreement and its provisions, including the forum selection clause, are inapplicable. The plaintiffs state that the second cause of action is against Paulson for detrimental reliance under La. C.C. art. 1967. The plaintiffs *1219 maintain that Paulson represented to the plaintiffs that Transtar Metals would go public and that the plaintiffs were required to invest to avoid dilution of their shares. The plaintiffs relied on the representations and invested an additional $1.3 million. The company never went public.
The plaintiffs claim that they do not seek to rescind the Merger Agreement or enforce any particular provisions of that Agreement. The plaintiffs contend that the actions taken after the merger caused them financial losses. The plaintiffs assert that the claims arise out of Paulson's mismanagement of a corporation of which the plaintiffs are shareholders.
Plaintiffs further maintain that suit should not be maintained in New York because Mr. Reynolds is a Louisiana resident, as are the Trustee and beneficiaries of the Trusts. Newtann, is a Louisiana partnership. Transtar Marine is a Louisiana corporation and Heindel is a Louisiana resident. Nonpayment of commissions and the acquisition of PSC took place in Louisiana.
The defendants point out that the parties engaged in the merger transaction in New York. Also the plaintiffs were physically present in New York when they negotiated and executed the Merger Agreement.
The defendants argue that as consideration for the merger, the plaintiffs received cash, Transtar Metals stock, and promissory notes linked to the payment of dividends from All Metal Services ("the AMS Notes"), of which PSC owned 50 percent of the stock. In connection with the merger, the plaintiffs, Paulson, Heindel (a shareholder of Transtar Metals), and others entered into a Stockholders Agreement, which governed subsequent sales of Transtar Metals stock.
Mr. Reynolds became an employee of the new PSC, which survived the merger. In March 2000, Mr. Reynolds executed the Consulting Agreement to terminate his employment with the new PSC.
The defendants contend that the Merger Agreement, Stockholders Agreement, and the Consulting Agreement each contain an identical choice-of-law provision and forum-selection clause.
The agreements state:
Each of the parties hereto hereby irrevocably and unconditionally submits, for itself or himself and its or his property, to the exclusive jurisdiction of any New York State court or federal court of the United States of America sitting in the County of New York in the State of New York ... in any action or proceedings arising out of or relating to this Agreement... and each of the parties hereto hereby irrevocably and unconditionally agrees that all claims in respect of any such action or proceeding may be heard and determined in any such New York... court.... Each of the parties hereto agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions....
Each of the Parties hereto irrevocably and unconditionally waives ... any objection that it or he may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to the Agreement in any New York ... court.... Each of the parties hereto irrevocably waives ... the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.
Further, Section 11.10(a) of the Merger Agreement includes a broad forum-selection catch-all clause that applies not only to disputes involving the Merger Agreement itself, but also to "any Related Documents *1220 or the transactions contemplated" under the Merger Agreement or the related documents.[2] The defendants point out that "related Documents" include the Stockholders Agreement and the AMS notes.
The plaintiffs' petition acknowledges that the AMS notes were part of the consideration for the Merger, and part of the transactions contemplated by the Merger. The plaintiffs partially seek to recover monies due under the AMS notes. The petition also asserts that Paulson is the "alter ego" of Transtar Metals, a party to the Merger Agreement. Also, the petition asserts that Heindel and Transtar Marine are also "alter egos" of Transtar Metals.
The defendants point out that in Louisiana forum-selection clauses are valid and enforceable. Pitts, Inc. v. Ark-La Resources, L.P., 30,836, 30,837, pp. 2-4 (La.App. 2 Cir. 8/19/98), 717 So.2d 268, 270; Digital Enterprises, Inc. v. Arch Telecom., Inc., 95-30 (La.App. 5 Cir. 6/28/95), 658 So.2d 20. The party seeking to set aside such a provision bears a heavy burden of clearly proving that enforcement would be unreasonable and unjust, or that the forum-selection clause arises from fraud or overreaching, or the clause contravenes a strong public policy of the forum where the suit is brought. See Pitts, 30,836, p. 3, 717 So.2d at 270. The defendants maintain that commercially sophisticated parties are free to limit their disputes to any forum of their choosing. There is no showing that the parties were not on equal footing. The parties who conferred and approved the terms of the agreements were sophisticated negotiators.
*1221 The defendants contend that the plaintiffs, by executing and accepting the agreements and the AMS notes, contractually bound themselves to bring suit on any causes of action arising out of or relating to the documents in New York courts. The catch-all provision of the Merger Agreement (as previously noted) applies not only to disputes involving the Merger Agreement, but also to "any Related Documents or the transactions contemplated" under the Merger Agreement, i.e., the AMS notes and the Stockholders Agreement.
The defendants argue that claims against Paulson are essentially claims against Transtar Metals. The plaintiffs alleged that Transtar Metals is Paulson's alter ego. Plaintiffs' allegations relate to the agreements and the AMS notes pursuant to the meaning of the Merger Agreement. Paulson and Heindel signed the Merger Agreement and the Stockholders Agreement.

Independent Contractor Status
The defendants assert that the provisions of the Consulting Agreement emphasize that it ended a previous employment relationship rather than commenced one.
The Consulting Agreement states in pertinent part:
WHEREAS, the Consultant desires to resign as an employee of the Company and the Company and the Consultant desire to terminate the Employment Agreement and the relationship of the parties thereunder.
Section 1 provides:
Section 1. Resignation.

Effective immediately, the Consultant hereby resigns as an employee, officer and director of the Company and each of its affiliates (including PSC of Florida FSC, Inc. and Production Supply Company FSC, Inc.) and the Employment Agreement is hereby terminated in its entirety without further action by either party hereto.
Section 5 states in pertinent part:
Section 5. Independent Contractor.

(a) The Consultant shall perform the Services as an independent contractor to the Company. The Consultant acknowledges that he is not an agent or representative of the Company and the Consultant has no authority to act for or to bind the Company or its affiliates without their respective prior written consents.
(b) The Consultant shall not make any claim under this Agreement or otherwise against the Company for workers' compensation, unemployment insurance compensation, health insurance (other than as specified in Section 4(c), life insurance, social security benefits, disability insurance benefits or any other benefits). The Consultant is solely responsible for his income and other taxes and the Company shall not withhold on behalf of the Consultant any sums for income tax, unemployment insurance or social security pursuant to any law or requirement of any government agency including, without limitation, unemployment tax, federal, state or foreign income tax, federal social security (FICA) payments and disability insurance taxes. The Consultant shall make such tax payments as may be required by applicable law and shall indemnify and hold the Company harmless from any liability the Company may incur as a consequence of the Consultant's failure to make such tax payment(s).
Under Section 5(a) of the Consulting Agreement, the parties agree that Mr. Reynolds' status is that of an independent contractor. Under Consulting Agreement Section 5(b), Mr. Reynolds is *1222 responsible for his own income tax, unemployment compensation and FICA payments.
In Knapp v. The Management Co., 476 So.2d 567 (La.App. 3 Cir.1985), the Third Circuit found that where there is no withholding of taxes or Social Security deductions, the relationship is that of a principal-independent contractor, and not that of an employer-employee. Similarly, in the present case, the lack of salary withholdings indicate that Mr. Reynolds was an independent contractor rather than an employee.
We conclude that the Consulting Agreement was not an employment contract. Because Mr. Reynolds was an independent contractor and not an employee, La. R.S. 23:921(A)(2), (which invalidates the forum selection clause with respect to an employee), does not apply.

Non-Competition Clause
The plaintiffs aver that the Consulting Agreement contains an invalid non-competition clause with a time limit of four years. La. R.S. 23:921(B) limits non-competition agreements to two years and a reasonable geographic area of specified parishes in Louisiana. The plaintiffs maintain that the non-competition clause invalidates the agreements.
Section 11.11 of the Merger Agreement, Section 18(b) of the Stockholders Agreement, and Section 10(b) of the Consulting Agreement contain severability clauses. Louisiana courts have held that the existence of a severability clause within a contract evidences the parties' intent to enforce the remainder of a contract should one of its provisions be invalidated. In Wied v. TRCM, LLC, 30,106, pp. 6-7 (La. App. 2 Cir. 7/24/97), 698 So.2d 685, 689, the Second Circuit found that the invalid non-competition clause did not invalidate the entire contract. In the present case, severability clauses are found in the three agreements. Any invalid non-competition clauses did not invalidate the entire contracts.
The trial court did not abuse its discretion in denying discovery that was directed to the merits of the case. Without the need for further interpretation from additional discovery, the Agreements provide unambiguous forum-selection clauses delegating New York as the jurisdiction where any causes of action related to the Agreements should be brought.
Accordingly, the judgment of the trial court granting the defendants' exceptions of improper jurisdiction and venue is affirmed.
AFFIRMED.
NOTES
[1] La. R.S. 23:921(A)(1) and (2) provide:

§ 921. Restraint of business prohibited; restraint on forum prohibited; competing business; contracts against engaging in; provisions for
A. (1) Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void.
(2) The provisions of every employment contract or agreement, or provisions thereof, by which any foreign or domestic employer or any other person or entity includes a choice of forum clause or choice of law clause in an employee's contract of employment or collective bargaining agreement, or attempts to enforce either a choice of forum clause or choice of law clause in any civil or administrative action involving an employee, shall be null and void except where the choice of forum clause or choice of law clause is expressly, knowingly, and voluntarily agreed to and ratified by the employee after the occurrence of the incident which is the subject of the civil or administrative action.
[2] Section 11.9 of the Merger Agreement states:

11.9 GOVERNING LAW.
THE PROVISIONS OF THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT GIVING EFFECT TO ANY CHOICE OF LAW OR CONFLICTING PROVISION OR RULE (WHETHER OF THE STATE OF NEW YORK OR ANY OTHER JURISDICTION) THAT WOULD CAUSE THE LAWS OF ANY JURISDICTION OTHER THAN THE STATE OF NEW YORK TO BE APPLIED.
Section 11.10 of the Merger Agreement provides in pertinent part:
11.10 Jurisdiction and Venue:
(a) Each of the parties hereto hereby irrevocably and unconditionally submits, for itself or himself and its or his property, to the exclusive jurisdiction of any New York state court or federal court of the United States of American sitting in New York County, New York, and any appellate court from any thereof, in any action or proceeding arising out of or relating to this Agreement, the Related Documents or the transactions contemplated hereunder or thereunder or for recognition or enforcement of any judgment relating thereto, and each of the parties hereto hereby irrevocably and unconditionally agrees that all claims in respect of any such action or proceeding may be heard and determined in any such New York state court or, to the extent permitted by law, in any such federal court. Each of the parties hereto agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.
(b) Each of the parties hereto irrevocably and unconditionally waives, to the fullest extent it or he may legally and effectively do so, any objection that it or he may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to this Agreement, the Related Documents or the transactions contemplated hereunder or thereunder in any New York State or federal court sitting in New York County, New York. Each of the parties hereto irrevocably waives, to the fullest extent permitted by law, the defense of an inconvenient forum to the maintenance of such action or proceeding in any court. (Emphasis added.)