CHUTZ, J.,
concurring in part and dissenting in part.
| ! Although I agree with the majority’s conclusion reversing the trial court’s denial of summary judgment insofar as plaintiff, Patrick O’Hara, I disagree with the result reached as to plaintiff, Wallace Schaefer. While there may be an outstanding issue of fact on O’Hara’s relationship with Glo-bus Medical Inc. (Globus), that fact is not material as to his entitlement to a declaratory judgment and, therefore I agree with the majority that the trial court erred in denying him summary judgment. But because Schaefer has failed to demonstrate that Louisiana law is applicable in his case, I believe that the trial court correctly denied summary judgment insofar as his request for declaratory relief.
In the motion for partial summary judgment, O’Hara and Schaefer sought a judgment determining as a matter of law that the non-competition, non-disclosure (NCND) agreements they entered into are unenforceable and, as such, that they are free to compete against Vortex Spine LLC (Vortex) and Globus in any lawful manner. In their memorandum in support of summary judgment, plaintiffs maintained that Louisiana law applies to the validity of the NCND agreements and, therefore, that under La. R.S. 23:921 the NCND agreements are without effect.
In support of summary judgment, O’Hara offered his affidavit. He attested that “On or about September 7, 2007, [he] executed a [NCND agreement], as a condition for becoming a sales representative for [Vortex].” He attached to his affidavit a copy of the NCND agreement, which is entitled “Globus Medical, Inc./No Competition and No Disclosure Agreement,” and is unsigned by Globus. In that agreement, O’Hara is identified as “Employee” and, as noted by the | ¿majority, the parties expressly agreed to an application of Pennsylvania’s law. But O’Hapra stated in his affidavit that he has “never been employed by [Globus] in any capacity.” He further attested that he never performed services for, or received compensation from Globus, and that he “never received any offer of employment or continued employment by Globus; [and] Glo-bus never provided [him] a salary, health insurance benefits, bonuses, sales commissions or stock options.” Globus offered no evidence to rebut this showing by O’Hara. Thus, despite O’Hara’s execution of the NCND agreement ostensibly in favor of Globus, according to the evidence offered in support of summary judgment, O’Hara was not Globus’s employee. The parties do not contend and nothing in the record suggests that O’Hara executed a written NCND in favor of Vortex. I agree with the majority that the contractual obligations in the Executive Distributor Agreement were between Vortex and Globus and that no evidence establishes that O’Hara (or Schaefer) were parties to that contract. Therefore, because the record is devoid of any basis to preclude O’Hara from competing against either Globus or Vortex, I agree with the major *88 ity’s conclusion that O’Hara’s status vis-á-vis Globus or -Vortex is not a material issue of fact precluding judgment in his favor.[1]
[.¡Turning now to Schaefer, as noted by the majority, the record contains a written NCND agreement between Schaefer and Vortex, which specified that Pennsylvania law is applicable to the parties’ performance and relationship. ■ According to La.C.C. art. 14, “Unless otherwise expressly provided by the law of this state, cases having contacts with other states are governed by the law selected in accordance with the provisions of Book IV of this Code.” According to salient provisions of La. C.C. art. 3537 of Book IV of the Civil Code, “Except as otherwise provided in this Title, an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.” La. C.C. art. 3540 states:
All other issues [except of form, see La. C.C. art. 3538 and capacity, see La. C.C. art. 3539] of conventional obligations are governed by the law expressly chosen or clearly relied upon by the parties, except to the extent that law contravenes the public policy of the state whose law would otherwise be applicable under Article 3537. (Emphasis added.)
Examining whether Louisiana law is “otherwise ... applicable- under Article 3537,” Article 3537 states:
That state [whose policies would be most seriously impaired if its law were not applied] is determined by evaluating the strength .and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2)-the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515,[2] as well as the *89 policies of ^facilitating the orderly planning of. transactions,., of promoting multi-state commercial intercourse, and of protecting one party from undue imposition, by the other.
The majority has correctly pointed out that Schaefer’s NCND agreement with Vortex was executed in Louisiana, the sales services were performed in Louisiana, and Louisiana has a strong public policy disfavoring execution of noncompetition agreements against employees.[3] I believe, however, that in light of the nature, type, and purpose of NCND' agreements as well as the orderly planning of transactions and the promotion of multistate commercial intercourse, Pennsylvania is the state whose policies would be most seriously impaired if its law were not applied.
, In his agreement with Vortex, Schaefer expressly acknowledged that Vortex and Globus owned proprietary and trade secret information[4] and the disclosure of that information to unauthorized third parties[5] would cause great and irreparable harm to Vortex and Globus. Thus, the nature, type, and purpose of the NCND agreements were clearly and expressly delineated, and Schaefer was fully apprised of the parties’ expectations relative: to these provisions. As such,. this factor favors ■ an application of,the law that the parties agreed to apply. Similarly, where the con-tract sets forth the expectations of the parties, it can be considered within the ambit of the cause of the obligation. See La. C.C. art. 1967 (cause is the reason I (¡why a party- obligates himself). As such, the; orderly planning of transactions and the promotion of multistate commercial intercourse favors an application of Pennsylvania -law as the law that the -parties agreed to apply. Accordingly, under Article 3540, Schaefer’s NCND agreement is governed by the -law expressly chosen or clearly relied upon by the parties, -which is not Louisiana law. See e.g., THH Properties Ltd. Partnership v. Hill, 41,038 (La.App.2d Cir.6/2/06), 930 So.2d 1214, 1218.
Moreover, to the extent that'Louisiana is the state whose policies would be most seriously impaired if its law is not applied under Article 3537 as set forth in Article 3540, I agree with the trial court that Schaefer has failed to show that Pennsylvania’s law violates Louisiana’s public policy. Although’ the majority correctly points out that La. R.S. 23:921 sets forth Louisiana’s public policy disfavoring non-competition agreements in employment contexts, *90 I disagree that La. R.S. 23:921(A)(2) and (C) must be read in pari materia to conclude that the parties were not free to make a choice of law selection in their agreements. Subsection (A)(2) clearly provides in relevant part:
The provisions of every employment' contract or agreement, or provisions thereof, by which any foreign or domestic employer or any other person or entity includes a choice of forum clause or choice of law clause- in an employee’s contract of employment ... or attempts to enforce a choice of forum clause or choice of law clause in any civil or administrative action involving an employee, shall be null and void except where the choice of forum clause or choice of law clause is expressly, • knowingly, and voluntarily agreed to and ratified by the employee after the occurrence of the. incident which is the subject of the civil or administrative action.
Under its clear terms, the limitation on a choice of law selection is imposed against enforcement of an employment contract or agreement. Because it is undisputed that Schaefer was an independent contractor, the provisions of Subsection (A)(2) do not apply. See La. C.C. art. 9 (when a law is, clear and unambiguous and its ^application does not lead to absurd consequences, the law shall be applied as written) and art. 10 (when the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law). There is no reason to conclude that the provisions of La. R.S. 23:921(C) stating, “An independent contractor, whose work is performed pursuant to a written contract, may enter into an agreement to refrain from carrying on or engaging in a business similar to the business of the person with whom the independent contractor has contracted, on the same basis as if the independent contractor were an employee,” is intended to refer to the choice of law prohibition in Subsection (A)(2). This reference can be easily understood as directed to the exceptions by which an employee may enter into a non-competition agreement that are also set forth in subsection (C), i.e., “Any person ... who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment.” Thus, under the plain language of subsection (C), an independent contractor whose work is performed pursuant to a written contract may agree not to compete in a business similar to that of the other party within specified temporal and spatial limitations. See Reynolds v. Paulson, 2003-1884 (La.App. 4th Cir.3/31/04), 871 So.2d 1215, 1222 (because plaintiff was an independent contractor and not an employee, La. R.S. 23:921(A)(2), which invalidates a forum selection clause with respect to an employee, did not apply).
The trial court stated in its oral reasons for its denial of the motion for summary judgment that Pennsylvania law on non-compete agreements “does not | ^violate or diminish [Louisiana’s] strong public policy concerning non-competes.... Pennsylvania’s law ... does not violate even the technical aspects of Louisiana’s law.” The trial court further explained' that Louisiana and Pennsylvania law are “very closely aligned other than minor technical issues on a geographical location definition basis, but the production is the same.” See e.g., Victaulic Co. v. Tieman, 499 F.3d 227, 235-37 (3rd Cir.(Pa.) 2007) (after noting that under Pennsylvania law compliance with a covenant not to compete is disfavored but that it is appropriate where the *91 covenant is incidental to an employment relationship between the parties; the restrictions imposed by the covenant are reasonably necessary for the protection of the employer; and the restrictions imposed are reasonably limited in duration and geographic extent, the court found no merit in the contention that, the non-competition covenant was not reasonably limited in geographical extent because the agreement prevented employee from selling certain products for named competitors, reasoning that in the Information Age, a per se rule against broad geographic restrictions was hopelessly antiquated, and that Pennsylvania courts (and federal district courts applying Pennsylvania law) have found broad geographic restrictions reasonable so long as they are roughly consonant with the scope of the employee’s duties).
I agree with the trial court. That Schaefer’s NCND agreement failed to specify the parish or parishes, municipality or municipalities, or parts thereof is a mere technicality which is not encompassed in Louisiana’s public policy consideration. Schaefer does not contend, nor could he, that a determination of the am-bits of the spatial component of this exception is not ascertainable. Simply put, Louisiana’s public policy allows enforcement of non-competition agreements by employers against employees and independent contractors including Schaefer. The duration of the NCND agreements and an articulation of the places included in the |SNCND agreements are technical concerns that are not encompassed in a determination of Louisiana’s public policy relative to an application of Article 3540. Unlike the consideration before us in review of O’Hara’s agreement, Schaefer cannot be considered an employee. Thus, Louisiana’s history of protecting employees and this circuit’s most recent pronouncement, see Garcia v. Banfield Pet Hosp., Inc., 2009-0466 (La.App. 1st Cir.1/21/10), 85 So.3d 261, 264, writ denied, 2010-0393 (La.4/30/10), 34 So.3d 299, precluding a noncompetition agreement where the spatial element was not expressly specified at the time the employee entered into the non-competition agreement are inapplicable to Schaefer.
Schaefer has failed to prove that under La. C.C.' art. 3540, Louisiana is the state whose policies would be most seriously impaired if its law were not applied under Article 3537. And to the extent that Louisiana is the state whose policies would most seriously be impaired if its law were not applied, Schaefer has failed to show that an application of Pennsylvania law'as agreed to by the parties contravenes Louisiana’s public policy. I disagree with the majority that the trial court erred in denying Schaefer’s motion' for summary judgment. •
For these reasons, I believe the trial court should have granted summary judgment in favor of O’Hara, but that it correctly denied summary judgment as to Schaefer. Therefore, I would grant the writ in part and reverse the trial court as to O’Hara; and I would deny the writ as to Schaefer.

. La. C.C. art. 3515 states:
Except as otherwise provided in this Book, an issue in a case having .contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) *89 the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of .more than one state.

. Globus asserted in its brief that Schaefer had contacts with Pennsylvania in that its headquarters is located there and that he participated in frequent teleconferences,’ meetings and email exchanges for the purpose of ordering and refurbishing their inventory and travelled to Pennsylvania to attend training courses. Although Globus filed a memorandum in opposition to plaintiffs’ motion for summary judgment, it offered no evidence to support these factual -assertions and, therefore, they are not before us in this review.

.The parties’ agreements expressly denoted that this information included but was not limited to customer lists; product specifications and .attributes; pricing information; technology development plans; forecasts; financial information; sales strategies and techniques; business records; models; prototypes; schematics; manuals; handbooks; literature; vendors; and business terms.

. The parties expressly defined third persons to include any person, partnership, corporation, firm, limited liability company, association, or other business entity that manufactures, sells, markets, or distributes products or services used in spine surgery.