817 So.2d 462 (2002)
Adonis and Victor RAPHAEL
v.
Geraldine Elizabeth RAPHAEL, et al.
No. 01-1564.
Court of Appeal of Louisiana, Third Circuit.
May 8, 2002.
R. Chadwick Edwards Jr., Edwards & Edwards, Abbeville, LA, for Plaintiffs/Appellants Adonis Raphael, Victor Raphael.
Steven Gerald Durio, Durio, McGoffin & Stagg, Lafayette, LA, for Defendant/Appellee Geraldine Elizabeth Raphael.
*463 Court composed of HENRY L. YELVERTON, JOHN D. SAUNDERS, and JIMMIE C. PETERS, Judges.
JIMMIE C. PETERS, J.
Victor Hubert Raphael (Victor) and Adonis Anthony Raphael (Adonis) appeal the trial court's grant of an exception of res judicata dismissing their suit against Jerry Raphael Callier (Jerry).[1] For the following reasons, we reverse the trial court judgment and remand this matter for further proceedings.

DISCUSSION OF THE RECORD
This litigation involves a dispute between the children of Henry G. Raphael and Sylvania Vallot Raphael over the division of their deceased parents' estates. Henry and Sylvania Raphael's marriage produced four children, Victor, Adonis, Jerry, and Emma Raphael Taylor (Emma). Henry died in 1996, and Sylvania died in 1999. During their marriage, they acquired a significant amount of property, both movable and immovable.
Victor and Adonis initially brought this suit to partition the estate and to obtain an accounting from Jerry[2] on January 6, 2000. On March 21, 2000, after efforts to settle the dispute failed, Jerry filed a motion to have the dispute submitted to mediation pursuant to La.R.S. 9:4103, et seq., the Louisiana Mediation Act. By orders signed March 27 and April 14, 2000, the trial court granted the motion.
The trial court appointed a mediator who facilitated the mediation between the parties on May 8, 2000, wherein Victor, Adonis, and Jerry reached an agreement which settled most of the disputed issues. The terms of the agreement were set forth in an attachment to a memorandum signed by the parties on that same day acknowledging the settlement. The agreement provided that Jerry agreed to transfer to her brothers her interest in the three funeral home locations belong to their parents' estate located in Jennings, Abbeville, and Lafayette, Louisiana, in exchange for the payment of $180,000.00 and the transfer by her brothers of all their interest in four other lots forming a part of the estate. Victor and Adonis were given a total of 120 days to obtain financing to satisfy their $180,000.00 obligation and were required to tender a $10,000.00 deposit by May 10, 2000, to be forfeited if that portion of the agreement relative to the funeral home properties "does not go through." Additionally, the agreement provided that Victor and Adonis would begin operating the funeral homes as owners within ten days after the tender of the purchase price. Other terms of the agreement further specified the rights and obligations of each party in effecting the transfer of the properties involved. Additionally, the agreement provided that each party has the right to demand specific performance of the other party.
The memorandum itself contained the additional language:
The parties further acknowledge and agree that by executing this agreement they are binding themselves to the *464 agreement. They further acknowledge and agree that, within a reasonable period of time hereafter they will enter into a formal settlement agreement, setting forth in more detail the terms of the agreement including the amount of any and all payments and an agreement to release, discharge, and forever hold the other harmless from any and all rights, claims, and causes of action arising from or related to the events and transactions which are subject matter of this case.
Victor and Adonis performed their obligations under the agreement, but when they presented Jerry with a written agreement encompassing the terms of the mediation settlement, she refused to sign, and sought to renegotiate the dispute.
Rather than renegotiate, Victor and Adonis sought court enforcement of the mediation agreement by a motion filed September 11, 2000. Before a hearing could be had on the motion, on January 16, 2001, they filed a supplemental and amending petition repeating their request that the mediation agreement be enforced, but also seeking an award of monetary damages from Jerry for her failure to comply with the memorandum agreement.
The trial court heard the motion to enforce the mediation agreement, but not the remaining issues raised by the supplemental and amending petition, on March 19, 2001. After the hearing on the motion, the trial court rendered judgment ordering enforcement of the agreement. The trial court then signed a written judgment to that effect on May 9, 2001.
On July 12, 2001, Jerry filed a peremptory exception of res judicata asserting that the judgment of May 9, 2001, and the terms of the settlement memorandum together effected a complete resolution of the issues before the court. At a hearing held September 10, 2001, the trial court granted the exception and dismissed the remaining causes of action asserted by Victor and Adonis against Jerry. The trial court signed a judgment to this effect on the same day, and this appeal followed.

OPINION
In asserting her exception, Jerry relies on La.R.S. 13:4231, which provides in pertinent part:
Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
(1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
Specifically, Jerry contends that the May 9, 2001 judgment enforced the entire mediation agreement, including the language of the settlement memorandum wherein the parties agreed to "release, discharge, and forever hold the other harmless from any and all rights, claims, and causes of action arising from or related to the events and transactions which are [the] subject matter of this case" including "a mutual release of all claims, except as to the enforcement of this agreement."
While we agree with Jerry's interpretation of the May 9, 2001 judgment, her argument ignores the fact that the release language of that agreement related to causes of action existing at that time, and not future causes of action. The remaining issues before the court, including, specifically, the issue of damages arising from her failure to comply with the agreement, were not the subject matter of that litigation. In other words, had she complied with the settlement agreement, no new *465 cause of action would have arisen. Thus, the relief sought by Victor and Adonis was not actionable until she refused to comply with the agreement.
Neither do we find persuasive her argument that the specific performance language of the attachment to the memorandum limits the claims of Victor and Adonis to that remedy alone. The language found in the attachment reads as follows:
Each party [to the agreement is] to have the right to specific performance, notwithstanding said deposit which shall include a mutual release of all claims, except as to the enforcement of this agreement.
This language immediately follows the paragraph requiring Victor and Adonis to deposit $10,000.00 as an advance toward the $180,000.00 purchase price of the funeral home properties as a non-refundable deposit to be forfeited if they do not complete that particular part of the agreement. We interpret this provision to provide that the $10,000.00 constitutes the agreed-upon damages for the failure of Victor and Adonis, after good faith efforts, to obtain financing for the $180,000.00. Obviously, in such a situation, Jerry could not be entitled to specific performance. In other words, forfeiture of the $10,000.00 would release Victor and Adonis "of all claims" relative only to this element of the agreement. The parties would still be able to demand specific performance of all other obligations due them under the agreement. However, we find nothing in the agreement that would limit either party to that remedy.
Moreover, the fact that the trial court only addressed the issues raised by the motion before the court at the March 19, 2001 hearing and not the other issues raised in the January 16, 2001 supplemental and amending petition does not make the May 9, 2001 judgment res judicata as to those remaining issues. Summary proceedings may be used for trial of "[a]n incidental question arising in the course of judicial proceedings." La.Code Civ.P. art. 2592(1). Additionally, the courts have long recognized that an effort to enforce a settlement agreement may properly be brought by summary proceedings. Banque De Depots v. Bozel Mineracao E Ferroligas, 98-0742 (La.App. 4 Cir. 1/27/99), 728 So.2d 533, writ denied, 99-0557 (La.4/23/99), 742 So.2d 882.
We further note that the judgment rendered by the trial court on the incidental question is not a final appealable judgment as defined by La.Code Civ.P. art. 1915. It is not covered by any of the situations in La.Code Civ.P. art. 1915(A), and the trial court did not designate it as a final judgment pursuant to La.Code Civ.P. art. 1915(B). Louisiana Code of Civil Procedure Article 1915 "lists the exclusive instances in which partial final judgments are permitted." Everything on Wheels Subaru, Inc. v. Subaru South, Inc., 616 So.2d 1234, 1241 (La.1993). Thus, the May 11, 2001 judgement is interlocutory in nature. For res judicata to apply, there must be a valid final judgment. See La. R.S. 13:4231.
We find that the trial court erred in granting the exception of res judicata and in dismissing the remaining causes of action asserted by Victor and Adonis.

DISPOSITION
For the foregoing reasons, we reverse the trial court's grant of Jerry Raphael Callier's exception of res judicata and dismissal of the remaining causes of action asserted by Victor Hubert Raphael and Adonis Anthony Raphael and we remand this matter to the trial court for further *466 proceedings consistent with this opinion. We tax all costs to Jerry Raphael Callier.
REVERSED AND REMANDED.
NOTES
[1] The caption of the litigation identifies the defendant as "Geraldine Elizabeth Raphael." However, the defendant uses the name "Jerry." The record and the documents contained in the record refer to the defendant as "Geraldine," "Jerry," and "Jerri" interchangeably. We will use "Jerry" in our opinion unless quoting language which refers to the defendant in a different manner.
[2] Emma died before this litigation began, and Victor and Adonis named her children as well as Jerry and Raphael Funeral Home, Inc. as defendants. However, the litigation currently before us involves a dispute between the brothers and Jerry only.