CHARLES R. JONES, Judge.
 

 h The Appellant, Hamilton Howard, appeals the judgment of the district court granting a motion to enforce settlement in favor of the Appellee, Louisiana Citizens Property Insurance Corporation, and dismissing the case of Mr. Howard with prejudice. Finding that the district court did not err in granting the motion to enforce, we affirm.
 

 Mr. Howard owns a home in Orleans Parish located at 4533 Piety Drive, which sustained roof and structural damages during Hurricane Katrina. He had a homeowner’s insurance policy with Louisiana Citizens Property Insurance Corporation (“Citizens”) for his Piety Dr. property. He alleges that his entire roof had to be replaced, and the contents of his home were lost.
 

 Citizens paid Mr. Howard $31,827.23 for damages sustained to his home under his homeowner’s policy. Subsequently, Mr. Howard and a representative for Citizens, adjuster Paul Ritchie, participated in mediation that was provided for through the “Louisiana Department of Insurance Mediation Program for Residential Claims Affected by Hurricanes Katrina and Rita,” pursuant to Emergency Rule 22, promulgated by the Department of Insurance of the State of | ¡.Louisiana.
 
 [1]
 
 Citizens and Mr. Howard reached an agreement at the mediation to settle the remainder of the homeowner’s claim of Mr. Howard. Both parties signed a Mediation Settlement Agreement wherein Mr. Howard agreed to accept a total of $30,536.15 in final settlement for the damages sustained to his home for Coverages A through D under his policy.
 
 [2]
 

 Six days after mediating his claims with Citizens, Mr. Howard filed suit against Citizens alleging that the insurance company defrauded him at the mediation. Citizens then filed a motion to enforce settlement agreement, which the district court granted after a show cause hearing was
 
 *699
 
 held in March 2010. However, Mr. Howard subsequently filed a motion for new trial, which the district court granted, and ordered that a new hearing on the motion to enforce be held. In June 2010, the district court granted the motion to enforce settlement agreement and dismissed the claims of Mr. Howard with prejudice. Mr. Howard timely sought the instant appeal.
 

 Mr. Howard raises two issues for review on appeal:
 

 1. Is the motion to enforce settlement agreement the appropriate pretrial procedure?
 

 2. Was sufficient evidence presented to the district court to preclude dismissal at summary judgment?
 

 In reviewing the judgment of the district court, we apply the manifest error standard of review. Both parties argue that the proper standard of review is
 
 de
 
 |
 
 ¿novo.
 
 However, the district court made a factual determination that a contract existed between the parties when the court ruled on the motion to enforce settlement agreement. Thus, we apply the manifest error or clearly wrong standard.
 
 Rogers v. Mumford,
 
 2008-1144, p. 5 (La.App. 3 Cir. 2/4/09), 6 So.3d 848, 851. In
 
 Keller v. Monteleon Hotel,
 
 09-1327, p. 2 (La.App. 4 Cir. 6/23/10), 43 So.3d 1041, 1042, we further explained the manifest error standard of review:
 

 Appellate courts review findings of fact made by the trial court judge using the manifestly erroneous or clearly wrong standard of review.
 
 Rosell v. ESCO,
 
 549 So.2d 840, 844 (La.1989). ‘[Wjhere there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.’
 
 Id.
 
 ‘Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong’
 
 Id.
 

 In his first assignment of error, Mr. Howard argues that the district court erred in considering the motion to enforce settlement agreement without an eviden-tiary hearing. Furthermore, Mr. Howard argues that summary judgment is inappropriate in this type of case because subjective facts are controlling. He maintains that the district court could not have properly rendered its summary judgment ruling without making improper factual findings and alleges that the court made credibility determinations on the issues of fraud and the alleged bad faith of Citizens by just reviewing affidavits.
 

 Citizens argues that Mr. Howard has improperly characterized its motion to enforce settlement agreement as a motion for summary judgment, and the two motions are not similar. It argues that a motion for summary judgment has a burden of proof that is specific to itself, requiring that a mover prove that there is “no genuine issue of material fact” under La C.C.P. art. 966. Citizens argues that it [4filed its motion to enforce settlement agreement, pursuant to the rules governing written motions in Book II of the Louisiana Code of Civil Procedure, specifically with respect to Articles 961, 962 and 963. It argues that its motion was a standard pre-trial motion that was subject to the rules of ordinary proceedings. Citizens argues that both a motion to enforce settlement agreement and a motion for summary judgment are governed by the laws of ordinary proceedings, in Book II of the Louisiana Code of Civil Procedure, instead of the laws controlling summary proceedings, in Book V of the Code of Civil Procedure.
 

 
 *700
 
 Citizens further argues that the claim of Mr. Howard that the district court erred in not holding an evidentiary hearing is without merit because a contradictory hearing was held on June 4, 2010, on the motion to enforce settlement agreement after Mr. Howard was served with the motion. Both parties participated in the contradictory hearing, filed briefs and presented arguments before the court.
 

 We note that there is a need for some procedural clarification regarding the distinction between a motion to enforce a settlement agreement and a motion for summary judgment because Mr. Howard is confusing the two motions. There are three different modes of procedure used in civil matters in district courts: ordinary, summary and executory. La. C.C.P. art. 851. Ordinary proceedings are governed by the articles in Book II of the Louisiana Code of Civil Procedure, whereas Book V contains the articles controlling summary and executory proceedings. As Citizens argued, a motion for summary judgment is only tried in an ordinary proceeding, wherein the mover argues that there is no genuine issue of material fact and thus, the mover is entitled to judgment as a matter of law. See La. C.C.P. art. 966-69. Yet, motions to enforce settlement are apt to present the narrow issue of making compulsory the terms of an agreement. See
 
 Banque De Depots v. Bozel Mineracao E Ferroligas,
 
 98-0742, pp. 10-11 (La.App. 4 Cir. 1/27/99), 728 So.2d 533, 538,
 
 writ denied sub nom., Depots v. Ferroligas,
 
 99-0557 (La.4/23/99), 742 So.2d 882.
 
 See also Raphael v. Raphael,
 
 2001-1564, p. 5 (La. App. 3 Cir. 5/8/02), 817 So.2d 462, 465.
 

 Furthermore, motions to enforce settlement are triable in a summary proceeding, which are conducted with rapidity, within the delays allowed by the court, and without citation and the observance of all the formalities required in ordinary proceedings. La. C.C.P. art. 2591. We explained in
 
 Banque
 
 that the use of summary proceedings assists in expediting the resolution of narrow issues, and encouraging parties that their agreements will rapidly be enforced:
 

 ... when a settlement of litigation is sought to be enforced, a motion to enforce that settlement is properly characterized as “an incidental question arising in the course of [that] litigation” which may properly be addressed by a summary proceeding (i.e. a motion) rather than by a completely new civil action. La.Code Civ. Proc. art. 2592(1). “Generally, summary proceedings are allowed in instances where the issue to be resolved is narrow and/or the need for rapid adjudication is great.”
 
 Clay v. Clay,
 
 389 So.2d 31, 35 (La.1979). Motions for enforcement of litigation settlements, which settlements must be either in writing or recited on the record in open court, La. Civ.Code art. 3071, are apt to present narrow issues. As to the need for rapidity, settlements of litigation, which are to be encouraged, are made more likely when parties have confidence that they can be enforced, if necessary, by the most expeditious procedure the law allows.
 

 Banque De Depots,
 
 98-0742, pp. 10-11, 728 So.2d at 538.
 
 See also Raphael v. Raphael,
 
 p. 5, 817 So.2d at 465. Thus, albeit that Citizens raised its motion through an ordinary proceeding, the motion may be addressed through a summary proceeding.
 

 In the matter
 
 sub judice,
 
 a motion to enforce settlement agreement was properly used to raise the narrow issue of whether the issue in dispute has been | (¡settled. This motion is substantively distinct from a motion for summary judgment. Furthermore, the timely consideration of the motion was in the best interest
 
 *701
 
 of judicial economy, and served to expedí-tiously resolve a homeowner’s insurance claim arising out of Hurricane Katrina, which as a matter of policy, is of the utmost importance to the Louisiana judiciary. Mr. Howard had the opportunity to file a brief in opposition to the motion, and to present oral argument against the motion at the contradictory hearing before the district court.
 

 Also, had Mr. Howard felt that Citizens was improperly using summary proceedings, he had to object to the usage in the district court. This court has explained that the defense of improper use of summary proceedings must be raised in the form of an exception in the district court, otherwise the objection to the use of summary procedure is waived. La. C.C.P. art. 926(B). In
 
 Impastato v. Bruno,
 
 503 So.2d 189, 189-90 (La.App. 4 Cir.1987), we stated:
 

 ... the defense of improper use of summary proceedings must be raised by dilatory exception.
 
 C. C.Pro.Art. 926(3).
 
 An exception to a summary proceeding shall be filed prior to, and shall be disposed of on the trial.
 
 C. C.Pro. Art. 2593.
 
 “All objections which may be raised through the dilatory exception are waived unless pleaded therein.”
 
 C. C.Pro. Art. 926.
 

 Considering that Mr. Howard did not timely except to usage of summary proceedings by Citizens in the district court, and that the motion to enforce settlement agreement was properly raised and considered by the district court, we find that the district court did not err in considering the motion. This assignment of error is without merit.
 

 The second issue raised by Mr. Howard is whether he provided sufficient evidence to preclude dismissal at summary judgment. As we discussed above, the insurance claim of Mr. Howard was dismissed after a contradictory hearing was |7held on the motion to enforce settlement agreement of Citizens. Thus, the issue at the crux of this matter is whether the district court committed manifest error in granting the motion to enforce settlement.
 

 Mr. Howard argues that the settlement was not valid because he was fraudulently induced into signing a settlement agreement with Citizens. He further argues that Citizens fraudulently concealed the true value of his claim, in violation of the duty of good faith, prior to the time the parties entered into the Settlement Agreement. Thus, he argues that Citizens gained an unjust and unfair advantage, leading to their unjust enrichment, at his expense. Lastly, he argues that the adjuster for Citizens:
 

 1. misrepresented the facts by failing to include all the items damaged by wind in the Citizens adjustment;
 

 2. failed to provide a copy of the insurance policy at the mediation as required by Emergency Rule 22;
 

 3. refused to recognize the full additional living expense claim, and the full contents claim, but instead kept silent on the issue of coverage;
 

 4. arbitrarily picked a settlement figure, refused to negotiate further, and “left Mr. Howard with no choice: either take their settlement figure or go home with nothing.”
 

 He submitted two affidavits in support of his opposition to the motion: one from himself and the other from the adjuster he hired, Steve Hitchcock. Mr. Howard argues that he discovered that the $49,036.91 adjustment that Citizens presented to him was less than half of what Mr. Hitchcock determined to be the value of the damages the subject property sustained.
 

 Citizens argues that at mediation Mr. Ritchie reviewed all the documentation
 
 *702
 
 presented by Mr. Howard, including the $125,000 estimate for damages relating to 1 ¡¡Coverages A and B. Citizens argues that Mr. Ritchie allowed for the additional roofing costs included in said estimate, as well as for expenses related to germicide and duct repair to the areas affected by wind damage. When Mr. Ritchie presented Mr. Howard with an offer of $22,983.22 for Coverage “A” damages, Mr. Howard accepted the offer. Regarding the settlement of Coverage B damages, Citizens further argues that Mr. Ritchie allowed for the difference in the original report prepared by Mr. Hitchcock and the re-inspection, a differential of $208.93. For Coverage “B” damages, Mr. Ritchie presented an offer of $208.93, which Mr. Howard accepted.
 

 Citizens also argues that it settled with Mr. Howard for his wind damages claim under Coverage C of his policy, for contents. Citizens argues that it approved the entire list of wind damages that Mr. Howard sustained to his upstairs bedrooms. Mr. Howard accepted $3,500 in settlement, which was the very amount he presented in his estimate for his Coverage C claim. Lastly, Coverage D, the additional living expense or loss of use claim of Mr. Howard, was settled for $3,844. Citizens argues that while Mr. Howard requested a settlement amount of $5,692 for additional living expenses, Mr. Richie determined that some of the additional living expenses claimed did not fall within the mandatory evacuation period. Citizens argues that Mr. Howard accepted all four offers presented to him at mediation, and thus, fully compromised his insurance claim.
 

 Compromises are favored in the law and the burden of proving the invalidity of such an agreement is on the party attacking it.
 
 Elder v. Elder & Elder Enterprises, Ltd.,
 
 2006-0703, p. 4 (La.App. 4 Cir. 1/11/07), 948 So.2d 348, 351,
 
 writ denied,
 
 2007-0560 (La.5/4/07), 956 So.2d 616,
 
 citing Duet v. Lucky,
 
 621 So.2d 168, 172 (La.App. 4 Cir.1993) and
 
 Ellison v. Michelli,
 
 513 So.2d 336 (LajApp.g 4 Cir.1987)). Also, La. C.C. art. 3071 provides that a compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship. The meaning and intent of the parties to a written instrument, including a compromise, is ordinarily determined from the four corners of the instrument.
 
 Chalmette Retail Ctr., L.L.C. v. Lafayette Ins. Co.,
 
 2009-0217, p. 9 (La. App. 4 Cir. 10/16/09), 21 So.3d 485, 492-93,
 
 reh’g denied
 
 (Nov. 10, 2009),
 
 writ denied,
 
 2009-2685 (La.4/9/10), 31 So.3d 392 and
 
 writ denied,
 
 2009-2692 (La.4/9/10), 31 So.3d 393. Extrinsic (parol) evidence is inadmissible to explain or to contradict the terms of the instrument.
 
 Id.
 
 Furthermore, La. C.C. art. 2046 sets forth the general rule of construction, providing that “[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent.”
 

 In
 
 Elder,
 
 p. 3, 948 So.2d at 350-51, we further explained that:
 

 [c]ontracts are formed by the consent of the parties established through offer and acceptance. La. Civ.Code art. 1927. Thus, “before a district court can find the existence of a valid written compromise agreement, it must find an offer and an acceptance.”
 
 McRae v. Ellis,
 
 93-1579 (La.App. 4 Cir. 2/11/94), 632 So.2d 841, 843 (citing
 
 Felder v. Georgia Pacific Corp.,
 
 405 So.2d 521, 523-524 (La.1981)).
 

 The agreement at issue in the matter
 
 sub judice
 
 states in pertinent part:
 

 [t]his settlement amount is full, complete, and a total final payment by the
 
 *703
 
 insurance company to the homeowner for the claim brought to the mediation. Both parties release any and all claims of any kind whatsoever against one another ...
 

 [[Image here]]
 

 Lastly, both parties recognize that this is a final and enforceable contract, with the exception being that that the homeowner, if not represented by counsel at this | mmediation, shall have three (3) working days within which to rescind this agreement, unless the homeowner has already cashed the check provided herein by the insurance company.
 

 The record does not reveal that Mr. Howard was fraudulently induced to settle with Citizens. Indeed, it appears that he personally negotiated with Citizens of his own volition, and understood his actions. Mr. Howard essentially received the amounts he demanded in settlement of Coverages B through D, as there was less than a $2,000 difference between what he demanded and received. Thus, it appears that his primary issue with the agreement is the amount he accepted in settlement for Coverage A.
 

 Allegedly accompanied by his adjuster Mr. Hitchcock
 
 [3]
 
 , and armed with his own appraisal of approximately $125,600, Mr. Howard entered into mediation of the belief that the value of his damages for Coverage A was valued at over $120,000. However, he settled his Coverage A claim for $22,983.22, which is
 
 $102,016.78 less
 
 than the value contained in the estimate of his own adjustor. He further argues that Mr. Ritchie left him with no choice when Mr. Ritchie told him that if he did not accept the offer he would leave with nothing.
 

 Even if Mr. Ritchie did take such a hardline position, he still left Mr. Howard with a choice: settle or leave the mediation with nothing to pursue resolving his claim through litigation or some other means. Mediation is a nonbinding alternative dispute resolution process. Section 4119(A)(1) of Emergency Rule 22 states: “[mjediation is non-binding unless all the parties specifically agree otherwise in writing.” Furthermore, Section 4121(A) of Emergency Rule 22, entitled
 
 Non-participation in mediation program,
 
 provides that:
 

 Inlf the insured decides not to participate in this claim resolution process or
 
 if the parties are unsuccessful at resolving the claim,
 
 the insured may choose to proceed under the appraisal process set forth in the insured’s insurance policy, by litigation, or by any other dispute resolution procedure available under Louisiana law. [Emphasis added].
 

 Mr. Howard did not have to settle his claim during the mediation because this process is nonbinding. He does not argue that anyone represented to him otherwise.
 

 Furthermore, Emergency Rule 22 also sets forth an explanation of what it means to negotiate in good faith in Section 4115, entitled
 
 Conduct of the Mediation Conference,
 
 wherein it states in pertinent part:
 

 A. R.S. 9:4101 C(4) provides “Mediation” is a procedure in which a mediator facilitates communication between the parties concerning the matters in dispute and explores possible solutions to promote reconciliation, understanding, and settlement. As such, it is not necessary to involve a private attorney and participation by private
 
 *704
 
 attorneys is discouraged by the Department. However:
 

 [[Image here]]
 

 4. Both parties must negotiate in good faith. A decision by an insurer to stand by a coverage determination shall not be considered a failure to negotiate in good faith. A party will be determined to have not negotiated in good faith if the party or a person participating on the party’s behalf, continuously disrupts, becomes unduly argumentative or adversarial, or otherwise inhibits the negotiations as determined by the mediator.
 

 In the matter
 
 sub judice,
 
 what Mr. Howard alleges to be the bad faith acts of Citizens amounts to the company standing by its policy determinations, which is an action that is specifically referenced as
 
 not
 
 being considered to be in bad faith 112under Emergency Rule 22. Thus, the alleged conduct of Mr. Ritchie on behalf of Citizens does not constitute bad faith.
 

 Another argument raised by Mr. Howard is that Citizens fraudulently induced him into settling his claim. A fraud action against a party to a contract has three basic elements: (1) a misrepresentation, suppression, or omission of true information; (2) the intent to obtain an unjust advantage or to cause damage or inconvenience to another; and (8) the error induced by a fraudulent act must relate to a circumstance substantially influencing the victim’s consent to (a cause of) the contract.
 
 Shelton v. Standard/700 Associates,
 
 2001-0587 (La.10/16/01), 798 So.2d 60, 64. To succeed on a claim of fraudulent inducement, Mr. Howard has to satisfy all three elements of a fraud action. Mr. Howard contends that his production of affidavits is sufficient factual support to establish that he can prove at trial that fraud occurred. Specifically, Mr. Howard argues that he has demonstrated that the Defendant intended to defraud him or gain an unfair advantage.
 

 However, aside from the self-serving affidavits of Mr. Howard and his appraiser, whose presence at the mediation is not substantiated, the record is void of any direct evidence supporting any of the elements of a fraud claim. Indeed, the record evidences that for whatever reason, Mr. Howard chose to accept at the mediation an amount lower than what his appraisal reflected.
 

 Lastly, Mr. Howard was also afforded the opportunity to rescind his agreement to the settlement within three (8) days of the settlement — pursuant to the agreement — because a homeowner “if not represented by counsel at this mediation, shall have three (3) working days within which to rescind this agreement, unless the homeowner has already cashed the check provided herein by 11Rthe insurance company.” Additionally, § 4119(A)(3) of Emergency Rule 22 also states:
 

 ... if a settlement is reached, the insured shall have 3 business days within which he or she may rescind any settlement agreement provided that the insured has not cashed or deposited any check or draft disbursed to him or her for the disputed matters as a result of the conference.
 

 Mr. Howard was not represented by counsel at the mediation, and could have rescinded the settlement; however, he did not avail himself of the opportunity. Furthermore, Mr. Howard negotiated all four settlement checks after filing suit against Citizens. The district court made a factual determination that a valid agreement existed between the parties, and the existence of said agreement was dispositive of the instant insurance dispute.
 

 
 *705
 

 DECREE
 

 For the foregoing reasons, the judgment of the district court granting the motion to enforce settlement agreement of Louisiana Citizens Property Insurance Corporation, and dismissing the case of Howard Hamilton with prejudice, is affirmed.
 

 AFFIRMED.
 

 [1]
 

 . Emergency Rule 22 calls for the "effective, fair, and timely handling of personal lines insurance claims”.
 

 [2]
 

 . Mr. Howard specifically received:
 

 Coverage "A” Dwelling: $22,983.22
 

 Coverage "B” Other Structures: $ 208.93
 

 Coverage "C” Personal Property: $ 3,500.00
 

 Coverage "D” Loss of Use:_$ 3,844.00
 

 Total Mediation Settlement $30,536.15
 

 [3]
 

 . Although Mr. Hitchcock attested that he was present at the mediation, Mr. Ritchie attested that Mr. Hitchcock was not present.