EDWIN A. LOMBARD, Judge.
 

 h Plaintiff, John D. Sileo, Jr., appeals a judgment of the district court granting a Motion to Enforce Settlement in favor of defendant, Allan Berger & Associates, ordering plaintiff to release a full sum payment of $81,777.69 to attorney Susan Earnest as part of a settlement agreement recited in court related to payment of attorney’s fees owed to Ms. Earnest for a previously-settled civil case. For the reasons provided below, we affirm.
 

 Factual and Procedural History
 

 This is an appeal from a lawsuit concerning claims for attorney’s fees between a law firm and a former attorney employed by the law firm. John D. Sileo, Jr., an attorney licensed to practice law in Louisiana, was hired by Allan Berger & Associates, a professional law corporation, in January 1996. Allan Berger & Associates (AB & A) is owned by Allan Berger, also
 
 *755
 
 an attorney licensed in Louisiana. Mr. Sileo worked at AB & A for eleven years until his resignation on January 26, 2007. On March 22, 2007, Mr. Sileo filed a “Petition for Unpaid Wages, Penalties and Attorney’s Fees” against AB & A, alleging that he was owed over $200,000 in unpaid attorney’s fees from cases he had tried or settled while employed by the firm. For the next two years, arduous litigation occurred between 12the parties, including re-conventional claims, separate lawsuits, and allegations of defamation.
 

 On May 26, 2009, the parties’ counsel, as well as Mr. Sileo and Mr. Berger personal ly, appeared before the district court to announce that they had “reached a settlement and compromise” as to all claims between the parties, which included any claims and reconventional demands for wages, reimbursements of fees and costs, damages, and breach of contract. The parties informed the Court of a percentage-based division of fees depending on certain time periods of when a particular case was settled or tried.
 

 The parties further informed the Court that they “have agreed to enter into cross indemnity agreements to protect one another from claims by third-party attorneys who may be entitled to a referral fee ... to our knowledge there are but two of those cases.” Mr. Berger and Mr. Sileo personally informed the Court of the two known cases, which were: 1) a matter called
 
 Ryan Babineaux;
 
 and 2)
 
 Brenda L. Argiz-Pipkin, et al v. Auto Auction of New Orleans, L.L.C.,
 
 filed in Division “F” of the Civil District Court for the Parish of Orleans under Docket No. 01-02557 (the
 
 “Pipkin
 
 case”).
 

 The parties’ counsel then began discussing the indemnity agreements on possible unknown third-party attorney fees or referral fees owed. Mr. Herman, counsel for Allan Berger & Associates, stated to the Court:
 

 MR. HERMAN: What I would ask, Your Honor, with respect to the indemnities, that Mr. Sileo and Mr. Berger exchange a list as part of their settlement with respect to all referral fees that may be due so that they can understand what, if any, indemnities they may be assuming. Particularly with respect to the Babineaux matter and the Pipkin matter, I would suggest to Your Honor that if those are the only two that are known, that they be excluded and that the referral fee be carved out and paid if in fact it’s due.
 

 |sMr. Schonekas, counsel for Mr. Sileo, agreed with that sentiment, and the Court acknowledged it as well:
 

 MR. SCHONEKAS: That’s what I was going to suggest, Judge, is if there isn’t a disagreement about the payment referral fee, it’s not going to affect the net anyway. It would simply come off the top.
 

 MR. HERMAN: Right. So that indemnity, Your Honor, would only apply to—
 

 MR. SCHONEKAS: — the non-disclosed claims of third parties.
 

 MR. HERMAN: In non-dispute.
 

 THE COURT: So there is no suggestion, the agreement is that on the two that are known, they will just be paid as due and on the ones that are unknown, they’ve both mutually agreed to indemnify each other.
 

 MR. SCHONEKAS: Correct.
 

 THE COURT: That’s the agreement. It’s not a suggestion.
 

 MR. HERMAN: That is correct.
 

 Mr. Sileo then stated that he did not know what Mr. Berger’s fee agreement with Ms. Earnest was on the
 
 Pipkin
 
 case, and sought further clarification, to which Mr. Berger and the Court replied:
 

 
 *756
 
 MR. BERGER: That fee has got to come out of, I mean, it’s like anything. It has to come off the top and what is the balance would be the percentages that—
 

 THE COURT: It would only affect what sum you would be receiving as it would affect any other case. That is to say, whatever the agreement is, that agreement is honored and that fee is paid, and then your division is what your division is.
 

 Mr. Berger admitted that, at that moment, he did not know what percentage arrangement he had with Ms. Earnest for the
 
 Pipkin
 
 case. He then suggested that the parties look at their books and get together again to discuss cases in which fees are potentially due to third-party attorneys. Mr. Sileo then stated:
 

 |4MR. SILEO: There’s only two, Judge, that they’ve mentioned, and the only two—
 

 MR. HERMAN: That is correct.
 

 MR. SILEO: Let me just make sure I am correct on this. If they come up with fifteen cases that they have agreements on that we have no idea about, I’m saying I have no idea, and Mr. Berger is reporting that that’s going to cut the money that I received, the 45% that I received on these cases, which was given in consideration for a lot of things here, Judge, I can’t enter that agreement. Because I have no idea what he’s done. And I’m not going to enter something based upon something that doesn’t exist ...
 

 ... So that we’re clear, if it’s just these two cases, if it’s those two cases and that’s all this is about, then that’s fine. Then the rest exactly goes back to the indemnification defense. I don’t, again, want something — This is way too vague because I don’t want to hear there’s fifteen million agreements he has with Mr. Herman or somebody else that exists. That wouldn’t be fair and I can’t agree to that.
 

 The parties’ counsel then reiterated that they would meet later in the week to discuss the indemnification arguments further, but that as to the two known matters,
 
 Babineaux and Pipkin,
 
 there is no confusion. Mr. Sileo then said:
 

 MR. SILEO: Judge, as long as it’s only these two.
 

 THE COURT: I understand.
 

 The district court understood that the by the end of the week, “you all will talk and have an agreement reached as it relates to this indemnity provision by Friday, and then I expect counsel to come and let me know what the agreement is.”
 

 The parties did not return to the district court, however, as they instead reached a written settlement agreement resolving all other claims and issues between the parties. The written and signed agreement of August 28, 2009 acknowledged that the parties reached a full and complete compromise resolving all claims against each other, and that the terms of the compromise were placed on | r,record in the May 26, 2009 hearing. It was discovered that AB & A had an agreement with Susan Earnest in which she would receive 33.33% of all total fees earned in the
 
 Pipkin
 
 case.
 

 Paragraph 5 of the August 28, 2009 written agreement states that “[t]he parties further agree that fees due other attorneys in the cases identified on Exhibit B will be paid prior to the division of the fees due to Berger and Sileo.” One of the listed cases in Exhibit B to the written agreement is the
 
 Pipkin
 
 case, with a case note stating that “Susan Earnest is owed 33.33% of the fee recovered by Allan Berger & Associates.”
 

 On March 15, 2010, AB & A filed a Motion to Enforce Settlement “compelling
 
 *757
 
 John D. Sileo, Jr. to comply with the oral and written agreements Sileo made before this Honorable Court.” Specifically, AB & A alleged that Mr. Sileo had refused to release funds onto Susan Earnest for fees earned in the
 
 Pipkin
 
 matter. AB & A claimed that the case settled for $754,000.00, and that as a result of the contingency arrangement the total attorney’s fees were $251,308.20.
 
 [1]
 
 AB & A argued that a 33.33% fee or $83,761.02 was owed to Susan Earnest, and that Mr. Sileo must release this amount directly onto Ms. Earnest before the division of fees between himself and AB & A. AB & A attached the August 28, 2009 written agreement to their Motion to Enforce Settlement.
 

 In response to AB & A’s Motion to Enforce Settlement, Mr. Sileo filed Exceptions of Prematurity, No Right of Action, No Cause of Action, and filed a cross Motion to Enforce Settlement Agreement. Mr. Sileo argued that under the 16settlement agreement of August 28, 2009, the
 
 Pipkin
 
 settlement is part of a percentage fee division in which he receives 45% of the entire fee, and that Ms. Earnest is only entitled to one-third of the remaining 55% awarded to AB & A. Mr. Sileo also sought to enforce an arbitration provision of the August 28, 2009 agreement.
 

 The matter came for hearing before the district court on October 19, 2010. The trial court denied Mr. Sileo’s exceptions for being “no more, no less than a delay tactic,” and granted AB & A’s Motion to Enforce Settlement. The Court expressed a strong recollection of the May 26, 2009 hearing:
 

 THE COURT: ... I understand your client’s argument as to what he contends was a vague situation but I tell you on that day if there was any vagueness at all, it was manufactured after the fact, after the transcript had already been transcribed. Because everyone who was present that day understood that as it related to two cases, the Babineaux case and the Pipkin case, that the third party referral person was going to receive a third of the attorney’s fees and then whatever amount was remaining after the third was — and I quote — taken off the top was going to be divided as they had agreed.
 

 Now, the only reason why there’s even a basis to argue vagueness is because there was some uncertainty as to whether there were other cases that had to be dealt with. In fact, that was the term that was used where in the section of the transcript where your client talks about other cases and to deal with those other cases, the written agreement developed a procedure to deal with the other cases.
 

 But as it relates to Pipkin and Babi-neaux, there was no confusion. There was no confusion by the parties and there was no confusion by this Court that it was absolute — Let me back that up again ...
 

 So, there’s no doubt whatsoever in this Court’s mind that the agreement was in those two cases, the Babineaux case and the Pipkin case, that the referral party would get from the attorney’s fees their percentage off the top and that the balance would be divided as was agreed.
 

 
 *758
 
 [7Mr. Boudreaux, Mr. Sileo’s new counsel, argued that because Mr. Berger was unaware of the exact agreement he had with Ms. Earnest regarding her payment on the
 
 Pipkin
 
 case, there was uncertainty regarding the division fees at the May 26, 2009 hearing. The district court responded:
 

 THE COURT: ... When it was a question from your client with regard to the indemnity when he asked Mr. Berger what was the percentage — In other words, he didn’t have any problems with taking the attorney’s fees off the top for Babineaux and Pipkin, but he didn’t know what the percentage was that was going to be taken off the top on that date. And Mr. Berger indicated, well, I don’t know either or I’m not sure. He didn’t want to make a comment on the record and then get back to his office and find out, oops, I made a mistake. So, he just simply indicated we were going to wait until — I think it was Friday — where information was going to be tendered to your client as it relates to what the percentage was and what, if any, other disputes existed with other cases.
 

 You had to be part of the environment, if you will, to appreciate what people understood at that time as opposed to looking at a cold transcript and trying to — not you — but trying to superimpose a different interpretation ...
 

 ... There was no Allan Berger fee or Sileo fee. It was just a fee that we were talking about here. That’s what was coming off the top. And then what was remaining, after coming off the top, was an Allan Berger fee and a John Sileo fee
 

 [[Image here]]
 

 The trial court granted AB & A’s Motion to Enforce Settlement, and ordered Mr. Sileo to release onto Susan Earnest $81,777.69, representing 32.5375% of the total fee earned in the
 
 Pipkin
 
 matter. Mr. Sileo appeals this judgment.
 

 Assignments of Error
 

 Mr. Sileo, appellant, first argues that the trial court wrongly substituted its own interpretation for that of the August 28, 2009 written agreement regarding the fee owed to attorney Susan Earnest for the
 
 Pipkin
 
 case. Mr. Sileo further argues that the disagreement should be handled in arbitration according to the August 28, 2009 written agreement.
 

 |
 
 sAppellate Standard of Review
 

 This Court’s recent jurisprudence reveals that we apply the manifest error appellate standard of review to a judgment granting a motion to enforce settlement.
 
 Howard v. Louisiana Citizens Property Ins. Corp.,
 
 2010-1302, pp. 2-3 (La.App. 4 Cir. 4/27/11), 65 So.3d 697. “The district court made a factual determination that a contract existed between the parties when the court ruled on the motion to enforce settlement agreement. Thus, we apply the manifest error or clearly wrong standard.”
 
 Id.,
 
 p. 3, 65 So.3d 697, quoting
 
 Rogers v. Mumford,
 
 2008-1144, p. 5 (La.App. 3 Cir. 2/4/09), 6 So.3d 848, 851.
 

 Appellate courts review findings of fact by the trial court judge using the manifestly erroneous or clearly wrong standard of review.
 
 Rosell v. ESCO,
 
 549 So.2d 840, 844 (La.1989). “Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.”
 
 Id.
 

 Law and Analysis
 

 A compromise is valid if there is a meeting of the minds of the parties as to exactly what they intended when the compromise was reached.
 
 Elder v. Elder &
 
 
 *759
 

 Elder Enterprises, Ltd.,
 
 2006-0703, p. 3 (La.App. 4 Cir. 1/11/07), 948 So.2d 348, 350. Compromises are favored in the law and the burden of proving the invalidity of such an agreement is on the party attacking it.
 
 Id.
 

 In 2007, the Legislature amended and reenacted the Louisiana Civil Code articles relative to compromise to be comprised of La. Civ.Code arts. 3071-3078. See Acts 2007, No. 138, § 1. Although the articles are new, they were not intended to change the law, but to merely reproduce the substance of the former articles and 19to clarify and reflect principles contained in the former articles and jurisprudence.
 
 See
 
 2007 Official Revision Comments, arts. 3071-3078;
 
 City of Baton Rouge v. Douglas,
 
 2007-1153, pp. 4-5 (La.App. 1 Cir. 2/8/08), 984 So.2d 746, 748-49. The Civil Code articles pertinent to the present matter are provided as follows:
 

 Art. 3071. Compromise; definition
 

 A compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship.
 

 Art. 3072. Formal requirements; effects
 

 A compromise shall be made in writing or recited in open court, in which case the recitation shall be susceptible of being transcribed from the record of the proceedings.
 

 Art. 3076. Scope of the act
 

 A compromise settles only those differences that the parties clearly intended to settle, including the necessary consequences of what they express.
 

 Not only does the party seeking to nullify a settlement agreement bear the burden of proof but the law strongly favors compromise agreements between parties. Courts will not invalidate such settlements absent a strong showing that they violate good morals or the public interest because of error, bad faith, or fraud.
 
 City of Baton Rouge v. Douglas,
 
 p. 5, 984 So.2d at 749. A compromise agreement recited in open court and capable of transcription from the record will be treated as though it were a written contract, and each party acquires the right of judicially enforcing the performance of the agreement even though its substance may later be written in a more convenient form.
 
 Trahan v. Coca-Cola Bottling Company United, Inc.,
 
 2004-0100, p. 10 (La.3/2/05), 894 So.2d 1096, 1104.
 

 In the matter
 
 sub judice,
 
 we find that the district court did not commit manifest error in finding that the parties reached a compromise settlement l10agreement in open court as pertains to the payment of fees to Susan Earnest in the
 
 Pipkin
 
 matter. Therefore, we affirm the judgment of the district court granting the Motion to Enforce Settlement.
 

 Contracts are formed by the consent of the parties established through offer and acceptance. La. Civ.Code art. 1927. Thus, “before a district court can find the existence of a valid written compromise agreement, it must find an offer and acceptance.”
 
 Howard v. Louisiana Citizens Property Ins. Corp.,
 
 p. 9, 65 So.3d 697.
 

 A reading of the transcript of the hearing of May 26, 2009 reveals that the parties had clearly reached an agreement that as to the
 
 Pipkin
 
 and
 
 Babineaux
 
 cases, the amount owed to third party-attorneys would be taken “off the top,” and that the remaining legal fees would be divided into a percentage arrangement between Mr. Sileo and Allan Berger & Associates. The only uncertainty that was expressed at during the May 26, 2009 hearing pertained to possible cross-indemnity agreements be
 
 *760
 
 tween the parties in the event that other unknown cases arose in which a fee was owed to a third-party attorney.
 

 As for the
 
 Pipkin
 
 fee, Mr. Berger did not know the precise percentage arrangement owed to Ms. Earnest on that day standing in court, but it was clear that all persons involved, including the district court, were in agreement that her fee would “come off the top” before the remaining funds would be divided between Mr. Sileo and the Berger firm. This was, as the district court stated, “an agreement, not a suggestion.” When seeking clarification, the district court assured appellant numerous times that the “off the top” agreement applied solely and specifically to the
 
 Babineaux
 
 and
 
 Pipkin
 
 cases.
 

 |nAt the October 19, 2010 hearing, the district court asked the parties how the fee in the
 
 Babineaux
 
 matter was dispersed, and the Court was told that the fee owed to the third-party attorney in
 
 Babineaux
 
 was taken “off the top,” and then the remaining percentage was divided between the parties, i.e., “[t]he same way it was articulated in the transcript.”
 

 Appellant argues on appeal that the language of the written agreement of August 28, 2009, particularly Exhibit B, shows that the parties agreed that Ms. Earnest would receive one-third of the percentage fee to the Berger firm after the division between himself and AB
 
 &
 
 A. We disagree. We see no contradiction between the written agreement and the May 26, 2009 agreement. But the evidence on record fully supports an “off the top” agreement as it pertains to the
 
 Pipkin
 
 matter solely by reviewing the transcript of May 26, 2009. La. Civ.Code art. 3072;
 
 Menard v. Sagrera,
 
 2002-0924, p. 4 (La.App. 3 Cir. 2/5/03), 838 So.2d 934, 936.
 

 In support of his exceptions filed in response to the Motion to Enforce Settlement, Mr. Sileo attached a letter dated September 6, 2000 in which Susan Earnest wrote to the Berger firm that “Pursuant to my conversation with Allan, it is my understanding that I will receive a referral fee of 33 and 1/3% ... on the above case. That is 33 and 1/3% Allan Berger and Associates total legal fee.” At the time of this letter, Ms. Earnest and Mr. Sileo were both employed by AB & A. When Ms. Earnest and Mr. Berger made this agreement, they clearly did not anticipate that ten years later, Mr. Sileo and the firm would become involved in a contentious dispute for legal fees that would reduce the one-third arrangement owed to Ms. Earnest through no fault of her own. The only fair and reasonable course of action, and to meet the true intent of the fee arrangement made between Ms. Earnest and Mr. Berger, is to provide Ms. Earnest her just due legal fee “off the top” exactly in |12the way the parties agreed to in the hearing of May 26, 2009. The Berger firm and Mr. Sileo, who both also performed legal work on the
 
 Pipkin
 
 matter, will split the remainder of the fee in accordance with their compromise settlement.
 

 Conclusion
 

 This Court finds that the agreement recited in court on May 26, 2009 constitutes a complete compromise settlement as to the distribution of legal fees owed to Susan Earnest in the
 
 Brenda L. Argiz-Pipkin
 
 matter. La. Civ.Code 3072. The parties, who were also present at the hearing and attorneys themselves, are considered by this Court to be sophisticated negotiators who clearly and amicably approved the “off the top” fee arrangement.
 
 Reynolds v. Paulson,
 
 2003-1884, p. 8 (La.App. 4 Cir. 3/31/04), 871 So.2d 1215, 1220.
 

 The record fully supports the compromise made between the parties, and the compromise does not frustrate the fee arrangement made between Ms. Earnest and the Berger firm on this case. The agree
 
 *761
 
 ment was recorded in the court transcript, and we find no manifest error in the district court’s factual finding that a compromise agreement was reached as to the
 
 Pipkin
 
 fee at hearing of May 26, 2009. Because the arbitration provisions do not apply to the undisputed fees listed in Exhibit “B” of the parties written agreement, we find no merit in appellant’s remaining assignment of error. We find no error in the denial of Mr. Sileo’s exceptions. The judgment granting Allan Berger & Associate’s Motion to Enforce Settlement is affirmed.
 

 11SDecree
 

 The district court judgment granting the Motion to Enforce Settlement, thus requiring plaintiff, John D. Sileo, Jr., to release unto Susan Earnest the full sum of $81,777.69, plus legal interest, is affirmed.
 

 AFFIRMED
 

 [1]
 

 . When Ms. Pipkin retained AB & A to represent her, both Mr. Sileo and Ms. Earnest were members of the firm. According to the record, AB & A agreed to pay Susan Earnest one-third of all fees earned in the case. Towards a latter point in the case, Mr. Sileo left the Berger firm, and Ms. Pipkin signed a retainer contract with him. Though the settlement agreement allegedly states that all three principals, Mr. Sileo, Ms. Earnest, and AB & A, are entitled to a fee, Mr. Sileo placed the funds in an IOLTA trust account.