Judge Joy Cossich Lobrano
liln this eviction and breach of lease case, plaintiff/appellant, 800 Iberville Street Limited Partnership (“800 Iber-ville”), appeals the district court’s April 29, 2016 judgment granting the motion to enforce settlement filed by defendants/appel-lees, V Restaurant Group, LLC and Vanna Ly (collectively the “restaurant” or “V-Sushi”).
This, matter arises out of a -sublease between 800, Iberville, a sub-lessor, .and the restaurant, a sub-lessee. The building, which the subject of the sublease and where the restaurant was located, is the former site of the D.H. Holmes Department Store and is owned by Canal Street Development Corporation (“CSDC”). There is a master, lease between CSDC and 800 Iberville. Various disputes developed between 800 Iberville and the restaurant, primarily involving unpaid rent, noise complaints, and certain improvements on the property. On February 25, 2014, 800 Iberville initiated eviction proceedings against the restaurant.
|2On January 29, 2016, 800 Iberville and the restaurant entered into a “settlement agreement in principle” in open court on the record. The settlement was not reduced to writing.
As recited on the record, in relevant part, by counsel for 800 Iberville:
The terms of that agreement are as follows; that 800 Iberville will pay to V Restaurant Group $775,000. Number two, no amplified music within the 45 day period that V Restaurant Group has to get out of the leased space. That’s term number 3, that V Restaurant *208 Group has 45 days to vacate the leased space[ ]. That 45 day period starts upon the approval by CSDC and the Board of HRI of this settlement agreement.
So in the meantime we are sort of status quo. Once that approval is given, that 45 day clock to vacate starts. And within that 45 day period there will be no amplified music...
Counsel for the restaurant stated in open court:
We have discussed this with my client, he is here to verify that they accept these terms. The agreement, 45 days, let me just be clear, doesn’t start until after we’re notified of their approval, the approval. .. The $775,000 will be paid, we hadn’t discussed terms, but I think it’s only fair that it’s paid immediately upon the date we move. So we will have 45 days to move. They’ll also have 45 days to deliver the check.
The attorneys for both parties answered affirmatively on the record that they had their clients’ authority to enter into the agreement. However, neither the parties nor their counsel defined “HRI” or “Board of HRI” when reciting the terms of the settlement on the record.
On March 11, 2016, 800 Iberville advised the restaurant that the settlement was not approved. On March 15, 2016, the restaurant filed a motion to enforce settlement, arguing that 800 Iberville unreasonably delayed the approval of settlement then arbitrarily rejected the settlement.
|;jOn April 13, 2016, 800 Iberville filed an opposition, arguing that the settlement was subject to a suspensive condition—the approval of two third parties, CSDC and the Board of Directors of HRI Properties, LLC—and that the suspensive condition was not met, rendering the settlement unenforceable.
800 Iberville’s exhibits to its opposition included affidavits of David Abbenante and Edward Boettner. Attached to each affidavit was the “DH Holmes—V Sushi Resolution Agreement [Privileged and Protected]” (the “Request”). Abbenante attested in his affidavit that he is the President of HRI Management, LLC, a subsidiary of HRI Properties, LLC and that he prepared the Request, which was presented to the Board of Directors of HRI Properties, LLC on January 29, 2016. In the Request, HRI Properties, LLC sought “authorization and approval from the HRI Board and CSDC Board to enter in a resolution agreement (RA) with V-Sushi” and further requested authorization to loan to 800 Iberville “up to $875,000 to allow the onetime consideration payment to V-Sushi along with legal and transactional costs associated with the RA and releasing of the space; contingent upon CSDC Board approval of the RA and Loan Repayment Terms.” The Request recommended approval of the settlement and the proposed loan.
Boettner attested in his affidavit that he is the Chief Administrative Officer of HRI Properties, LLC and a member of the Board of Directors of HRI Properties, LLC. He attested that, on January 29, 2016, the Request was presented to the Board of Directors of HRI Properties, LLC, and that, on March 10, 2016, Boett-ner attended a meeting with the Board of Directors of HRI Properties, LLC, at which |4the settlement in principle was not approved, notwithstanding HRI Properties, LLC’s recommendation in favor of settlement.
On April 14, 2016, the restaurant filed a supplemental memorandum in support of its motion to enforce settlement, in which it argued that board approval was merely a formality to provide a timing mechanism for the restaurant to vacate the property, *209 that 800 Iberville failed to disclose its attempt to obtain a loan as a condition of settlement, and that 800 Iberville represented to the restaurant that counsel for 800 Iberville had “full authority” to settle the “entire case.”
On April 15, 2016, 800 Iberville filed a restated opposition to enforcement of settlement and Boettner’s revised affidavit, which corrected the name of the entity from which 800 Iberville sought settlement approval, the Board of Managers of HRIP Holdings, LLC.
The district court rendered judgment on April 29, 2016, granting the restaurant’s motion to enforce settlement. 800 Iberville filed both an application for supervisory writs and an appeal with this Court, contending that the district court erred, as a matter of law, as follows:
1. by failing to find the settlement subject to a suspensive condition, approval by the HRI Board;
2. by enforcing settlement when the suspensive condition of approval by third parties was not fulfilled;
3. by characterizing 800 Iberville’s argument “to recognize and uphold the suspensive condition of approval as an ‘action to nullify a settlement agreement’ and, thus, imposing on 800 Iberville an unduly stringent burden of proof.”
| ¡jThis Court, on its own motion, consolidated the writ application with the appeal on August 24, 2016.
We first consider whether this Court has jurisdiction to review this matter. 800 Iberville seeks both supervisory and appellate review of the same district court judgment dated April 29, 2016.
Although the district court judgment granted the motion to enforce settlement, the judgment is not final, as it does not dispose of the entire matter and does not include the dismissal of any parties. See Gerhold v. Giles, 2011-0992, p. 8 (La.App. 4 Cir. 1/25/12), 83 So.3d 1170, 1175. See also Favrot v. Favrot, 2010-0986, pp. 3-4 (La. App. 4 Cir. 2/9/11), 68 So.3d 1099, 1102-03. The judgment also does not conclude the issues between the parties without further action from the district court, i. e., entry of a money judgment against either party. The district court’s subsequent order dated June 10, 2016, explicitly states that the district court intended for the April 29, 2016 judgment to be final and appealable and that the district court is divested of jurisdiction pending appeal. However, like the April 29, 2016 judgment, the June 10, 2016 order does conclude or dispose of the entire case.
As the April 29, 2016 judgment is not final and appealable, in order for us to reach the merits of this appeal we must exercise our supervisory, rather than appellate, jurisdiction. See La. Const. art. V, § 10(A). See also Gerhold, 2011-0992 at p. 9, 83 So.3d at 1175. In many instances, this Court has exercised its discretion and “converted ‘appeals’ of non-appealable judgments to applications for 1 ^supervisory writs in those cases in which the motions for appeal were filed within the thirty-day period allowed for the filing of applications for supervisory writs.” Favrot, 2010-0986 at p. 6, 68 So.3d at 1104. See also Uniform Rules, Courts of Appeal, Rule 4-3. Here, the motion for appeal was filed within the thirty-day time period allowed for the filing of an application for supervisory writs. Nevertheless, because an application for supervisory writs was also timely filed, we find it unnecessary to convert the appeal of the April 29, 2016 judgment to an application for supervisory writs. Rather, we dismiss the appeal and consider 800 Iber-ville’s arguments under our supervisory jurisdiction. See Star Transp., Inc. v. Pilot Gorp., 2014-1228, p. 3 (La.App. 4 Cir. *210 6/24/15), 171 So.3d 1195, 1197, writ denied, 2015-1446 (La. 11/16/15), 184 So.3d 26; Narcise v. Jo Ellen Smith Hosp., 98-2417, pp. 7-8 (La.App. 4 Cir. 3/10/99), 729 So.2d 748, 752.
We now consider the merits of 800 Iberville’s writ application. 800 Iberville argues that the settlement was subject to a suspensive condition,[1] approval of the settlement by third parties, and that the district court improperly enforced settlement even though this condition of settlement was not fulfilled. 800 Iberville also contends that the district court applied an incorrect and more stringent burden of proof to 800 Iberville, which it argues only applies to actions to nullify settlement.
|/The restaurant argues that the district court properly found the settlement enforceable because 800 Iberville waived any suspensive condition when it thwarted fulfillment of that condition.[2] The restaurant also contends that it is entitled to have any doubt, arising out of the settlement terms, construed to benefit the restaurant.[3]' According to the restaurant, “HRI”—as contemplated by the settlement terms—was Historic Restoration, Inc., which was the party that signed the sublease on behalf of 800 Iberville as its general partner. The restaurant argues that no settlement approval was sought from Historic Restoration, Inc., and that 800 Iberville instead requested a loan from the Board of Managers of HRÍP Holdings, LLC to fund the settlement. The restaurant contends that this loan request was not a part of the settlement terms and “is not consistent with ‘seeking approval from HRI or CSDC...’” The restaurant also' argues that an agreement was rejached as to all economic terms, such that any third party settlement approval was a “mere formality” and only a timing mechanism for the restaurant to vacate the property and 800 Iberville to make payment.
This Court reviews a judgment granting a motion to enforce settlement under the manifest error or clearly wrong standard of review.[4] Howard v. La. Citizens Prop. Ins. Corp., 2010-1302, pp. 2-3 (La.App. 4 Cir. 4/27/11), 65 So.3d 697, 699 (“The district court made a factual determination that a contract existed between the parties when the court ruled on the motion to enforce séttlément agreement. Thus, we apply the manifest error or clearly wrong standard.”). As we explained in Gerhold, 2011-0992 at p. 9, 83 So.3d at 1175-76 (internal citations omitted):
A court of appeal may not set aside a trial court’s finding of fact in the absence of manifest error or unless it is clearly wrong. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that -its own evaluations and *211 inferences are as reasonable. Reversal of findings of fact on appeal requires that; (1) the appellate court find from the record that no reasonable factual basis exists for the trial court’s finding, and (2) the appellate court determine that the record establishes the finding is clearly wrong or manifestly erroneous.
Louisiana Civil Code Article 3071 defines a compromise as “a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship.” A compromise “shall be in' writing or recited in open court, in which case the recitation shall be susceptible of being transcribed from the record of the proceedings.” La. C.C. art. 3072. A compromise agreement recited in open court and capable of transcription from the record will be treated as though it were a written contract, and each party acquires the right of judicially enforcing the performance of the agreement even.though its substance may later be written in a more convenient form. Trahan v. Coca-Cola Bottling Co. United, 2004-0100, p. 10 (La. 3/2/05), 894 So.2d 1096, 1104. “Recital of the agreement in open court must make full disclosure of the terms, ... so that the parties concerned are fully apprised of their rights and obligations.” Tolbert v. Hyatt Mgmt., 496 So.2d 1054, 1055 (La. App. 4th Cir. 1986) (citing Troxclair v. Parish of St. Charles, 450 So.2d 759, 761 (La. App. 5th Cir. 1984)).
“A compromise is valid if there is a meeting of the minds of the parties as to exactly what they intended when the compromise was reached.” Sileo v. Berger, 2011-0295, p. 8 (La.App. 4 Cir. 9/28/11), 74 So.3d 753, 758-59 (citing Elder v. Elder & Elder Enter., Ltd., 2006-0703, p. 3 (La. App. 4 Cir. 1/11/07), 948 So.2d 348, 350); Feingerts v. State Farm Mut. Auto. Ins. Co., 2012-1598, p. 11 (La.App. 4 Cir. 6/26/13), 117 So.3d 1294, 1301. “Compromises are favored in the law and the burden of proving the invalidity of such an agreement is on the party attacking.it.” Sileo, 2011-0295 at p. 8, 74 So.3d at 759 (citing Elder, 2006-0703 at p. 3, 948 So.2d at 350).
Contracts are formed by the consent of the parties established through offer and acceptance. La. C.C. art. 1927. “It follows that an enforceable compromise agreement formed by offer and acceptance[ ] may not be revoked by either party. The ‘flip side’ of this principle is that an agreement that has not been formed by offer and acceptance is not enforceable and therefore can be revoked by either party.” Richardson v. O’Byrne, 2000-2202, p. 8 (La.App. 4 Cir. 10/16/02), 830 So.2d 1013, 1020.
This Court has rejected the argument that, where a compromise contains a provision requiring approval of the compromise by a third party, approval was a formality only. Id., 2000-2202 at p. 7, 830 So.2d at 1019. Rather, this Court found |inth.at acceptance of the offer could not occur until the third party approved -the offer; thus, the compromise was not final or enforceable when the offer was revoked prior to third party approval. Id., 2000-2202 at p. 9, 830 So.2d at 1020.
In reviewing the evidence of record before us, wé do not find a factual basis from which to conclude that a valid compromise was reached. The transcript of the January 29, 2016' hearing reveals that the parties plainly set forth that their agreement was subject to the approval of third parties. Counsel for 800 Iberville stated, in reciting the terms: “That 45 day period.-starts upon the approval by CSDC and the Board of HRI of .this settlement agreement.” Counsel for the restaurant reiterated: *212 “The agreement, 45 days, let me just be clear, doesn’t start until after we’re notified of their approval...” Counsel for the restaurant, when discussing on the record continuance of trial, stated: “But since this agreement is subject to those approvals, we don’t want to bump this can down the road for a year from now.” The record contains no approval of the settlement by any third party. Rather, the settlement was presented to and considered by Board of Managers of HRIP Holdings, LLC, which ultimately rejected settlement.
Notably, when reciting the terms of the settlement on the record, the parties and their attorneys failed to define “HRI.” The parties continue to disagree about the identity of “HRI,” whether each respective party should have anticipated its opponent’s interpretation of “HRI,” and whether HRI’s approval could properly encompass a loan request. When reciting the settlement terms, the parties and the district court also acknowledged on the record that certain disputes remained | nunresolved, namely, disposition of fixtures, furniture, and equipment and date of delivery for settlement funds.
Taking together the facts before us, we find no meeting of the minds. We further find that the in-court recitation of the settlement in principle was insufficient to make full disclosure of its terms. Thus, the settlement fails to meet the requirements of a valid and enforceable compromise. Under these circumstances, the district court was manifestly erroneous to find that a binding compromise was confected. Having reached this conclusion, we find it unnecessary to address 800 Iberville’s remaining arguments.
Accordingly, for the reasons stated above, we dismiss the appeal, grant the application for supervisory writs, reverse the April 29, 2016 judgment of the district court, and remand this matter for further proceedings consistent with this opinion.
APPEAL DISMISSED;
WRIT GRANTED; REVERSED AND REMANDED

, “A conditional obligation is one dependent on an uncertain event. If the obligation may not, be enforced until the uncertain event occurs, the condition is suspensive. La. C.C. art. 1767.

, "A condition is regarded as fulfilled when it is not fulfilled because of the fault of a party with an interest contrary to the fulfillment.” La. C.C. art 1772.

, “In case of doubt that cannot be otherwise resolved, a contract must be interpreted against the obligee and in favor of the obligor of a particular obligation. Yet, if the doubt arises from lack of a necessary explanation that one party should have given, or from negligence or fault of one party, the contract must be interpreted in a manner favorable to the other party whether obligee or obligor.” La, C.C. art. 2057.

. 800 Iberville contends that this matter should be reviewed de novo. For the reasons discussed here, we disagree.