| ORLEANS PARISH SCHOOL BOARD | * | NO. 2025-C-0247 |
|---|---|---|
| | * | |
| VERSUS | | COURT OF APPEAL |
| | * | |
| THE CITY OF NEW ORLEANS AND NORMAN WHITE, IN HIS CAPACITY AS CHIEF FINANCIAL OFFICER FOR THE CITY OF NEW ORLEANS | * | FOURTH CIRCUIT |
| | | STATE OF LOUISIANA |
| | * * * * * * * | |

APPLICATION FOR WRITS DIRECTED TO
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2019-05174, DIVISION "J"
Honorable D. Nicole Sheppard
* * * * * *
**Judge Nakisha Ervin-Knott**
* * * * * *

(Court composed of Judge Daniel L. Dysart, Judge Joy Cossich Lobrano, Judge Nakisha Ervin-Knott)

*LOBRANO, J., CONCURS IN PART AND DISSENTS IN PART WITH REASONS.*

William D. Aaron, Jr.
DeWayne L. Williams
AARON & GIANNA, PLC
201 St. Charles Avenue, Suite 3800
New Orleans, Louisiana 70170


COUNSEL FOR RELATOR


Donesia D. Turner
CITY ATTORNEY
1300 Perdido Street - Room 5E03
New Orleans, Louisiana 70112

James M. Garner
Stuart D. Kettle
SHER GARNER CAHILL RICHTER KLEIN & HILBERT, L.L.C.
909 Poydras Street, Suite 2800
New Orleans, Louisiana 70112

Ike Spears
SPEARS & SPEARS
909 Poydras Street, Suite 1825
New Orleans, Louisiana 70112

COUNSEL FOR RESPONDENTS

**WRIT GRANTED; RELIEF DENIED**
**MAY 19, 2025**

The Orleans Parish School Board ("OPSB") seeks review of the trial court's March 19, 2025 judgment, which denied in part its motion to enforce settlement agreement. For the reasons that follow, we grant OPSB's writ application, but deny the requested relief.

## PERTINENT FACTUAL AND PROCEDURAL HISTORY

The underlying facts of this matter have been previously detailed in *Orleans Par. Sch. Bd. v. City of New Orleans,* 2020-0043 (La. App. 4 Cir. 6/03/20), 364 So.3d 252, *writ granted, vacated on other grounds*, 2000-00932 (La. 12/22/20), 307 So.3d 184. Below, we recount some of the facts and procedural history germane to the present matter:

> On May 15, 2019, the Orleans Parish School Board filed a "Petition for a Writ of Mandamus, or in the Alternative, for Preliminary and Permanent Injunction, Declaratory Judgment, and Damages." The Petition names as defendants the City of New Orleans and Norman White, in his capacity as the Chief Financial Officer for the City of New Orleans[1] (collectively, the "City").
>
> According to the Petition, the City, through the authority vested in it by the Louisiana Constitution, various statutes and the New Orleans Home Rule Charter, has collected ad valorem taxes and sales and use taxes on behalf of the OPSB. Those taxes, the OPSB maintains, are "dedicated

---

[1] Romy Schofield-Samuel is the current Chief Financial Officer for the City of New Orleans.

and to be used exclusively for local elementary and secondary schools." However, according to the OPSB's Petition, the City has failed to disburse all of those taxes it has collected on the OPSB's behalf.

The OPSB further alleges that, since 2007, the City has been improperly using some of the taxes collected on the OPSB's behalf to fund its statutory obligations to various retirement funds. Those funds include the pension funds of the "City Clerks, the Assessors, New Orleans Firefighters, District Attorneys, Registrars of Voters, and Sheriffs."

Additionally, the Petition alleges that the City "has been unconstitutionally collecting an administrative fee for its collection of OPSB's taxes." The sums that the City has allegedly withheld amount to more than $7.6 million, which the City has used pay its pension fund obligations, and "approximately $3.4 million in administrative fees that City withholds each year." In addition to these sums, the OPSB alleges that, "[u]pon information and belief," that "the amount of funds improperly withheld by the City far exceeds" these amounts.

*Id.* at pp. 1-2, 364 So.3d at 257.

In an attempt to settle this litigation, on November 13, 2024, Councilmember Joseph I. Giarrusso ("Councilmember Giarrusso") sent an email of proposed settlement terms to OPSB President Katherine Baudoin ("OPSB President Baudoin") and Member Olin Parker ("Member Parker"). Copied on this email were Councilmember Jean-Paul Morrell ("Councilmember Morrell"); Councilmember Morrell's Chief of Staff, Krystal Hendon; Councilmember Giarrusso's Chief of Staff, Amanda B. Rizzo; Councilmember Giarrusso's Policy Director, Aimee B. McCarron; and Gilbert A. Montaño ("Mr. Montano"), Chief Administrative Officer ("CAO") for the City of New Orleans. OPSB President Baudoin responded to the email that she and Member Parker agreed with the terms and would discuss these terms with the other OPSB members. On November 14, 2024, OPSB formally approved the settlement recommendation.

Jonathan T. Harris ("Mr. Harris"), Mr. Montaño's Chief of Staff, emailed a series of proposed amendments to the 2025 Budget ordinances ("Budget") to the

City Council of New Orleans ("City Council") staff on November 18, 2024. One of the proposed amendments to the Budget included a line item for $10 million to the Department of Law for initial payment towards the proposed settlement agreement with OPSB. Three days later, the City Council adopted the Amended Budget, which included the $10 million appropriation for OPSB. On November 26, 2024, Mayor LaToya Cantrell ("Mayor Cantrell") approved and returned the Amended Budget to the Clerk of the City Council.

After the Amended Budget was finalized, the City Attorney's Office and counsel for OPSB began drafting a cooperative endeavor agreement ("CEA") in December 2024. A series of email exchanges reflect both parties' edits to the proposed CEA. Despite their best efforts, a completed CEA, signed by both parties, was never perfected. According to OPSB, "Mayor Cantrell reneged on the settlement agreement."

On February 7, 2025, OPSB filed a motion to enforce settlement agreement as to portions of settlement agreement funded by the City Council and as to prohibition against charging collection fees and request for expedited consideration ("motion"). In the motion, OPSB requested that the trial court order the City "to comply with the settlement agreement reached between the parties and (1) pay the portions of Settlement Agreement already funded by the City Council and to be funded prior to [the] hearing for 2024 - 2025 (up to $27 Million); and (2) stop charging and/or deducting any amount/fees from the sales and ad valorem taxes dedicated to the OPSB."[2] The City opposed the motion and argued that, as CAO, Mr. Montaño lacked actual and/or apparent authority to enter into an agreement to

_____

[2] In its memorandum of support attached to the motion, OPSB asserted that since 2008, "the City has illegally diverted and/or withheld approximately $134,918,219.00 from the OPSB."

3

settle litigation filed against the City of New Orleans. The City Council filed a motion for leave to intervene to join motion to enforce settlement agreement on February 14, 2025.

The trial court heard the motion on February 20, 2025. At the conclusion of the hearing, the trial court took the matter under advisement and allowed the parties to submit post-trial memoranda. On March 19, 2025, the trial court issued a written judgment and reasons for judgment wherein the motion was "denied in part relative to the agreements not included in the 2025 Budget Ordinance approved November 26, 2024 as the court gave reasons that the CAO did not have the requisite authority from the Mayor to bind the City of New Orleans to such agreement."[3] This timely writ application for supervisory review followed.

## STANDARD OF REVIEW

The standard of review on a motion to enforce settlement is the manifest error or clearly wrong standard. *Coppage v. Transdev Servs., Inc.*, 2020-0419, p. 4 (La. App. 4 Cir. 3/19/21), 320 So.3d 1206, 1210 (citing *800 Iberville St. Ltd. P'ship v. V. Rest. Grp., LLC*, 2016-0799, p. 7 (La. App. 4 Cir. 6/7/17), 221 So.3d 205, 210). "The manifest error standard requires that this Court review the record in its entirety, not to determine whether the trial court's findings are wrong, but whether they find reasonable support in the record, even though the reviewing court is convinced that its interpretation is more reasonable." *Id.* (quoting *Succession of Kirschman*, 2019-1101, p. 5 (La. App. 4 Cir. 7/1/20), 302 So.3d 552, 556). Therefore, "[t]he trial

---

[3] According to the March 19, 2025 judgment, the motion was also "granted in part, whereas the Orleans Parish School Board is entitled to the initial allocation provided in the 2025 Budget Ordinance of ($10,000,000) 10 million dollars which should be issued to the Plaintiffs, within 30 days from the signing of this judgment." However, in its writ application, OPSB only seeks review of the portion of the judgment that denied in part its motion.

4

court's judgment determining the existence, validity and scope of a compromise agreement depends on a finding of the parties' intent, which is an inherently factual finding." *Id.* (quoting *Morris, Lee & Bayle, LLC v. Macquet*, 2014-1080, p. 14 (La. App. 4 Cir. 3/23/16), 192 So.3d 198, 208).

However, "where legal error interdicts the fact finding process, the manifest error standard no longer applies and, if the record is complete, an appellate court should make its own [*de novo*] review of the record." *Louisiana-Annunciation Condo. Ass'n, Inc. v. Kennedy*, 2023-0327, p. 11 (La. App. 4 Cir. 11/16/23), 377 So.3d at 812 (quoting *Lam ex rel. Lam v. State Farm Mut. Auto. Ins. Co.*, 2005-1139, p. 3 (La. 11/29/06), 946 So.2d 133, 135) (alteration in original). Further, "[s]tatutory interpretation is a question of law subject to *de novo* review." *Id.* (quoting *Havard v. Jeanlouis*, 2021-00810, p. 2 (La. 6/29/22), 345 So.3d 1005, 1007) (alteration in original).

**DISCUSSION**

As its sole assignment of error, OPSB asserts the trial court erred in holding that a settlement between the parties was not confected under the law. Specifically, OPSB maintains the trial court was clearly wrong in determining that Mr. Montaño did not have actual or apparent authority to enter into the settlement agreement or that Mayor Cantrell did not ratify the settlement agreement by signing the Amended Budget.

A compromise (or settlement) is "a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship." La. C.C. art. 3071. According to La. C.C. art. 3072, "[a] compromise shall be made in writing or recited in open court, in which case the recitation shall be susceptible of being transcribed from the

5

record of the proceedings." "A compromise agreement, which is not reduced to writing and evidenced by documentation signed by both parties, is unenforceable." *Porche v. Porche*, 2023-471, p. 11 (La. App. 5 Cir. 4/24/24), 386 So.3d 695, 703 (citing *Hawthorne v. Barbier*, 2002-1903, p. 3 (La. App. 4 Cir. 2/19/03), 841 So.2d 28, 29). Generally, Louisiana courts have declined to enforce a compromise when the requirements of La. C.C. art. 3072 are not met. *See Sullivan v. Sullivan*, 1995-2122, pp. 4-6 (La. 4/8/96), 671 So.2d 315, 318.

"For a written compromise agreement to be enforceable, 'the written agreement must be signed by both parties [or their agents], obligating both to do what they have agreed on.'" *Bernadas v. Edet*, 2024-0418, pp. 5-6 (La. App. 4 Cir. 2/26/25), ___ So.3d ___, ___, 2025 WL 617725, *3 (quoting *Sullivan*, 1995-2122, p. 4, 671 So.2d at 317) (alteration in the original). "The requirement that a compromise be reduced to writing in order to be enforceable does not necessarily mean that the agreement must be contained in one document; however, the purpose of the writing requirement is to serve as proof of the agreement and acquiescence of the parties thereto and, as such, must be signed by both parties, and aims at avoiding litigation over the terms of the settlement." *Porche*, 2023-471, pp. 11-12, 386 So.3d at 703 (citing *S. Nights, Inc. v. Barnett*, 2004-411, p. 3 (La. App. 4 Cir. 8/18/04), 881 So.2d 1225, 1228).

In the instant matter, we observe that the record does not contain a writing signed by all parties (or their authorized agents) evidencing an offer and acceptance, as required to effectuate an enforceable settlement. OPSB argues the submitted evidence–email exchanges, the OPSB meeting minutes, and the approved Amended Budget–establishes the requisite offer and acceptance. On November 13, 2024,

6

Councilmember Giarrusso sent an email to OPSB President Baudouin and Member Parker–to which multiple individuals were copied, including Mr. Montaño – stating:

> President Baudouin and Member Parker –
>
> I want to thank you for your partnership and care for the children of New Orleans. In an effort to continue and strengthen that partnership, this is what I, the Administration, and Vice-President Morrell propose to the Orleans Parish School Board (OPSB) with the understanding the parties to approve these material terms:
> 1.      The City of New Orleans (CNO) will pay $20 million in new money in two installments to OPSB. The first installment of $10 million is due on or before December 31, 2024. The second installment of $10 million is due on or before $10 million on or before [sic] April 1, 2025;
> 2.      Effective January 1, 2025, the City of New Orleans will stop charging and/or deducting any amount/fees from the sales and ad valorem taxes dedicated to OPSB unless such action is approved in advance by OPSB;
> 3.      CNO will allocate Harrah's/Caesar's funds for education to OPSB from 2025-2034;
> 4.      CNO will allocate $3 million per year from 2025-2034 to Thrive Kids or any similar OPSB program;
> 5.      CNO will allocate $1 million per year from 2025-2034 to YouthForce NOLA, New Orleans Career Center, or any similar trade/vocational training and,
> *6.*      In recognition of the proposed funding set forth above, the OPSB will dismiss its current lawsuit against CNO without prejudice upon the New Orleans City Council passing of the 2025 budget and then dismiss the lawsuit with prejudice ***after a completed CEA between the parties memorialize these material terms.***
>
> Please call or email with any questions.
>
> Regards, Joe

(Emphasis added). On the same day, OPSB President Baudouin responded:

> Councilmembers Giarrusso and Morrell and Mr. Montano,
>
> Many thanks to you and your staffs for the immense amount of work that you've done to get to this point. The terms you provided are agreeable to Olin and me. We are talking with our colleagues about it this evening with a goal to bring before the board at our meeting tomorrow. Olin or I will follow up tomorrow about next steps.
>
> Have a great evening!
>
> Katie

The next day, OPSB formally approved the settlement recommendation, which is reflected in OPSB's board meeting minutes from November 14, 2024. On November 18, 2024, Mr. Harris emailed a series of proposed amendments to the 2025 Budget–which included a line item for $10 million attributed to the Department of Law for initial payment towards the proposed settlement agreement with OPSB–to the City Council staff. The City Council adopted the Amended Budget, which was inclusive of the $10 million line item for the proposed settlement with OPSB, and Mayor Cantrell approved and returned the Amended Budget to the Clerk of the City Council on November 26, 2024.

OPSB maintains the email correspondence exchanged between the parties regarding the agreement to settle this dispute included both an offer and acceptance sufficient to satisfy the "in writing" requirement under La. C.C. art. 3072. Louisiana jurisprudence recognizes that the exchange of emails and documents may constitute a compromise agreement. *Porche*, 2023-471, p. 12, 386 So.3d at 703; *Precept Credit Opportunities Fund, L.P. v. Walker*, 2021-0670, p. 11 (La. App. 4 Cir. 6/22/22), 343 So.3d 299, 307. However, La. C.C. art. 1947 provides, "When, in the absence of a legal requirement, the parties have contemplated a certain form, it is presumed that they do not intend to be bound until the contract is executed in that form." The evidence in the record demonstrates the parties intended the CEA to be the final written contract. Councilmember Giarrusso's November 13, 2024 email clearly indicates that OPSB and the City contemplated "a completed CEA between the parties [to] memorialize [the] material terms [of the agreement]." There would have been no need for "a completed CEA" if the parties intended the email exchanges to constitute a binding written agreement. After the Amended Budget was finalized,

8

the City Attorney's Office and counsel for OPSB began drafting a CEA in December 2024. A series of email exchanges reflect both parties' edits to the proposed CEA. On December 11, 2024, counsel for OPSB emailed the City Attorney the following:

> Donesia:
>
> Good talking with you this morning. Attached is the draft CEA we discussed. After you have reviewed the document please call me to discuss the document and a strategy and expedited timeline moving forward.
>
> Bill

Nearly a week later, on December 17, 2024, at 1:40 P.M., the City Attorney replies:

> Bill,
>
> See attached document with our proposed edits

A little over an hour later, at 2:54 P.M., counsel for OPSB responds:

> Donesia:
>
> We are fine with the city's edits and have made one additional edit in Article II A(2) to address the comment made by Stuart Kottle. If you are in agreement with our change please advise and send me a "clean copy" reflecting all agreed upon changes.
>
> Bill

Again, almost thirty minutes later, at 3:22 P.M., counsel for OPSB emails the City Attorney:

> Donesia:
>
> I just noticed that there was a miscalculation of the total payments to be made by the City. The payments in Article IIA should total $90 Million and not $83 Million. 1 have made additional edits to arrive at the correct amounts in Article IIA Paragraphs 3,4 and 5 and to reflect the fact that there will be 10 rather than nine annual payments. My apologies for the mixup. + [sic]
>
> Bill

Despite their best efforts and various email exchanges, a completed CEA, signed by both parties, was never perfected.

This Court acknowledges that email exchanges may satisfy the "in writing" requirement of La. C.C. art. 3072. Nevertheless, in the instant matter, the record is void of a completed and signed CEA or a settlement document outlining the obligations of the parties or their acquiescence to its terms for this Court to review. The only signed document in the record is the Amended Budget approved by Mayor Cantrell. Pursuant to Mayor Cantrell's duties under Section 3-113(2) of the Home Rule Charter[4], she approved the Amended Budget and returned it to the Clerk of the City Council, which included the $10 million line item to the Department of Law for settlement with the OPSB. By operation of law, OPSB is entitled to the $10 million included in the approved Amended Budget.

Accordingly, we find the emails and documents relied upon by OPSB are insufficient to satisfy the writing requirement of La. C.C. art. 3072, and thus, a valid written settlement agreement does not exist. Without compliance with La. C.C. art. 3072, we find there was no legally binding settlement agreement for the trial court to enforce. Based on this Court's determination that a valid written settlement agreement between the parties does not exist, we pretermit discussion of Mr.

---

[4] Section 3-113(2) of the Home Rule Charter provides:

> The Mayor, within ten calendar days of receipt of an ordinance, shall return it to the Clerk with or without his approval or with his disapproval. If the ordinance has been approved it shall become law upon its return to the Clerk; if the ordinance is neither approved nor disapproved it shall become law at twelve o'clock noon on the tenth calendar day after its adoption; if the ordinance is disapproved, the Mayor shall submit to the Council through the Clerk a written statement of the reasons for the veto. The Clerk shall record upon the ordinance the date of its delivery to and receipt from the Mayor.

Montaño's authority to enter into a settlement agreement or Mayor Cantrell's ratification of the settlement agreement.

## DECREE

For the above-mentioned reasons, we find there was no legally binding settlement agreement between OPSB and the City for the trial court to enforce. As such, we grant the writ but deny the requested relief.

**WRIT GRANTED; RELIEF DENIED**